[Civ. No. 2663.   Third Appellate District.—January 26, 1924.]

## R. P. RADICH, Respondent, v. GEORGE CERNOKUS, Appellant.

[1] BROKER'S COMMISSIONS—LISTING CONTRACT—ABSENCE OF LICENSE. A listing contract, by which an owner appoints another as his agent to sell certain real property, is not void because such agent does not have a real estate broker's license at the time of its execution. It is sufficient if he has such license at the time he procures a purchaser.

[2] ID.—SUFFICIENCY OF EVIDENCE—FINDINGS — APPEAL. — On appeal from a judgment in favor of the plaintiff in an action to recover a real estate broker's commission, the question is not whether there is evidence which would support a judgment in favor of the defendant, but whether there is substantial evidence to justify the material findings in favor of the plaintiff, notwithstanding there may be ample evidence to support contrary findings.

[3] ID.—PROCURING OF PURCHASER — RIGHT TO COMMISSION. — Where the owner of real property signs a listing contract appointing another as his agent to sell the same upon certain terms, and agrees to pay a specified commission, and the latter procures a purchaser who is ready, willing, and able to buy the property upon such terms, he is entitled to the agreed commission.

[4] ID.—DESCRIPTION OF PROPERTY—EVIDENCE.—In this action to recover a real estate broker's commission for finding a purchaser ready, willing, and able to buy upon the terms upon which defendant had agreed to sell, there was no merit in the contention that the property was not sufficiently described in the listing contract, where it was described therein as "40 acres . . . located 4 miles of Fresno on Church Ave. road," and the defendant testified that he owned no other land at the time the listing contract was executed and there was no pretense at the trial that he did not understand what land was intended by the description.

APPEAL from a judgment of the Superior Court of Fresno County.   S. L. Strother, Judge.   Affirmed.

The facts are stated in the opinion of the court.

1. Effect of failure of broker to obtain a license on his rights to commissions, notes, 5 **Ann. Cas.** 897; **Ann. Cas.** 1912D, 378; 1 **L. R. A. (N. S.)** 1159.

J. Mazuran and George D. Collins, Jr., for Appellant.

James W. Campbell and Frank Kauke for Respondent.

FINCH, P. J.—This appeal is from a judgment in favor of plaintiff for the amount of an alleged commission for finding a purchaser for defendant's land.

The complaint alleges that a real estate broker's license was issued to plaintiff on the twenty-seventh day of January, 1920; that in that month the defendant authorized plaintiff to sell defendant's land as the latter's agent; that plaintiff procured a proposed purchaser who was ready, willing, and able to buy, and who offered in writing to buy, defendant's land at the price and on the terms provided in the authorization, but that defendant refused to sell.

Plaintiff's license, dated January 1, 1920, was admitted in evidence. In December, 1919, defendant signed a listing card appointing plaintiff his agent to sell the land, but the card was dated January 1, 1920, for the reason that defendant had theretofore listed the land with another agent whose authorization would not expire until the latter date. The written appointment of plaintiff as defendant's agent contained the following terms, the italicized parts being in writing and the others in print: "I hereby appoint *R. P. Radich* of Fresno, my agent, with the exclusive right to sell the property described on the reverse side of this card, for the price and under the conditions hereon described, or for any less amount hereafter authorized by me, and to receive deposit on the same. . . . I hereby agree to pay *twenty-five hundred* commission on the selling price. This authorization is to remain in full force and effect for *30 days,* and thereafter until revoked by me in writing. . . . *40* acres *$60,000* . . . Terms *$60,000* Cash; Balance *$18,000 Cash 7 P. c* Amt Mtg. on Place *$4000* Held by *4,000 Int.* Int. . . . . . . . . . How Payable . . . . . . . . . ." Neither party is proficient in the use of the English language and the listing card was written by another person at their request and was signed by defendant. It is apparent that the terms of the authorization to sell are uncertain. There was no uncertainty in the mind of the defendant, however, as to the terms intended by the parties in the execution of the listing contract. He testified as follows: "Q. And the way you talked about the matter

of selling, you were willing to sell for the $18,000 and $4,000 a year? A. Yes, sir. Q. That was satisfactory to you? A. Yes, sir. Q. And interest at 7 per cent? A. Yes, sir. . . . Q. So you remembered, didn't you, all clearly as to just how you were willing to sell the land, from the beginning on? You had in mind what you had told Radich, you would deal for $60,000, $18,000 cash, and $4,000 a year and 7 per cent, the trays and boxes to go with the land? A. Yes, sir.''

[1] Appellant contends that the listing contract is void because the plaintiff did not have a broker's license at the time of its execution. He had such a license at the time he procured a purchaser. The contention is without merit. (*Houston* v. *Williams*, 53 Cal. App. 267 [200 Pac. 55].)

It is urged that the evidence is insufficient to support the findings and judgment. In an effort to sustain this contention appellant sets out certain favorable parts of his own testimony. [2] The question is not whether there is evidence which would support a judgment in favor of defendant, but whether there is substantial evidence to justify the material findings in favor of plaintiff, notwithstanding the fact that there may be ample evidence to have supported contrary findings. The plaintiff testified that on the thirtieth day of January, 1920, he procured a written offer from Alex Josephian to purchase the property on the terms agreed upon between plaintiff and defendant. The writing was addressed to defendant and, omitting the description of the property, was as follows: ''I hereby offer to purchase your ranch . . . for the total purchase price of sixty thousand dollars ($60,000) payable: eighteen thousand dollars cash upon the execution and delivery of a written contract of sale; four thousand dollars yearly thereafter on the principal, together with interest on deferred payments at the rate of 7% per annum, payable annually; and enter into usual written contract.'' The plaintiff further testified that at the same time Josephian gave the witness a check for $500 as a deposit on the purchase price; that on the same day he informed defendant of the transaction with Josephian and it was agreed that the parties would meet the next day; that the next morning defendant said ''he no feel like come through the deal, but he says: 'I going to think over what I'm going to do.' ''; that witness and Josephian went

to defendant's place on the 3d of February and there showed him the check for $500 and asked him to sign an acceptance of Josephian's offer, but that defendant said "he no want to sign anything. He says this all the time, he want his listing card back, and sometime he says this wife no like sell property. . . . He say he no sign anything, he no want to take that check for $500 deposit I offer him"; that on the 11th of February defendant refused to accept the offer of Josephian, saying "he going to think over what he do"; that on the 16th of February Josephian informed defendant that if he did not sign the contract then Josephian would "ask for his money back" and that defendant replied: "I no sign anything. . . . I like better spend two or three or five thousand dollars for fight than come through with this"; that one or two days later the defendant said to plaintiff and Josephian: "I guess we going through with the deal, I drawed the contract out," and that Josephian replied: "It is too bad, now, I paid my money for the other property when I came back from your home." Another witness for plaintiff testified that on the 11th of February certified checks in the sum of $18,000 were tendered to the defendant and a formal demand made for the execution of a contract of sale in accordance with the terms of the listing contract and that the defendant "declined to go ahead with the transaction." There was much other evidence to corroborate plaintiff's testimony as well as some in contradiction thereof, but enough has been stated to support the findings. The opportunity to make a sale to Josephian was lost through the defendant's unreasonable delay and refusal to accept a *bona fide* offer to purchase upon the terms authorized. [3] Having procured a purchaser who was ready, willing, and able to buy the property upon such terms, the plaintiff became entitled to the agreed commission.

[4] There is nothing in the contention that the property was not sufficiently described in the listing contract. It was described as "40 acres . . . located 4 miles of Fresno on Church Ave. road." The defendant testified that he owned no other land at the time the listing contract was executed and there was no pretense at the trial that he did not understand what land was intended by the description.

It is contended that plaintiff was not entitled to a commission until a sale was consummated. The contention is fully

answered by reference to the case of *Purcell* v. *Firth,* 175 Cal. 746 [3 A. L. R. 1396, 169 Pac. 379].

The judgment is affirmed.

Young, J., *pro tem.,* and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 25, 1924, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was de-' nied by the supreme court on March 24, 1924.

All the Justices concurred.