[Civ. No. 4535. Second Appellate District, Division Two.— December 9, 1927.]

F. W. BRENNEMAN, Appellant, v. C. M. LANE et al., Respondents.

L. M. Chapman, Ward Chapman and D. Howard Painter for Appellant.

R. W. Richardson and Charles E. Wyman for Respondents.

VALENTINE, J., *pro tem.*—This action was brought by the plaintiff to recover the sum of $3,250 for commissions alleged to be due under a contract by defendants. The evidence shows that in January, 1922, and for some time thereafter, the defendant Lane was the owner of a large apartment house in Hollywood, known as the Hillview Apartments. Through his agent, the defendant, Norman, he had contracted an exchange with one J. M. Neeland for orchard property in the Sacramento Valley, and for a lot in the Morris Vineyard tract on Hill Street, Los Angeles, called the Neeland lot. The transaction between Lane and Neeland was in escrow, but could not be consummated unless Neeland and Lane in some manner raised $30,000. In January, 1922, in personal interviews had between the plaintiff and the defendants, plaintiff's services were enlisted to attempt in some way to raise that sum of money. After negotiations with defendant Lane the plaintiff found a man by the name of A. Otis Birch, who was willing to exchange a lot that he owned in Los Angeles city at First and Hill Streets, called the Birch lot, for the Neeland lot, and advance in the transaction $35,000. Plaintiff had many interviews with the defendant parties in interest and finally Birch's $35,000 went into escrow and the transaction was later consummated.

The two questions raised on this appeal are (1) whether plaintiff had complied with the requirements of section 20 (Stats. of 1919, p. 1252), of the Real Estate Brokers' Act, and whether he was a duly licensed broker at the time his alleged cause of action arose; and (2) whether the defendant Norman was authorized as agent to bind his co-defendant, Lane, by the agreement which he made with plaintiff for the payment of commissions to the latter.

As to the first point, plaintiff was to receive $3,250 through escrow when certain property described in said

escrow "is actually received," i. e., "deeded to C. M. Lane, his representatives or assigns," unless said escrow failed "for any other reason," and should "not be consummated." Plaintiff's cause of action did not finally "arise" until all of the above conditions had been met. It is virtually conceded that all the conditional matters occurred except the last, i. e., that the escrow should not "fail," and should be "consummated." The trial court found that the cause of action herein arose June 30th, possibly basing this finding upon the evidence that on that date or on June 29, the deeds were recorded. *Non constat* but that the escrow might still "fail" and not be "consummated." This finding seems erroneous as being based on a mere conclusion of the escrow clerk. The mere passing of title by the recording of the deeds was not the only condition, but the payment of the commission was conditioned upon the escrow being actually consummated and the amount was to be paid only through escrow. Therefore, if the plaintiff had brought his action on the thirtieth day of June against the defendants for recovery of the commission, it would have been premature. Some of the checks for disbursements of money were not written up until July 3d, and plaintiff testified that he was then told by the escrow clerk that they were waiting to hear from San Bernardino where one of the properties was situated, and that the escrow was not then ready to close. Further, the money was only to be paid through escrow, and therefore, since no time was specified as to when the escrow-holder should disburse money, the escrow-holder had a reasonable time within which to make up his accounts, write his checks, and pay it over. So that, without doubt, plaintiff's alleged cause of action did not arise until after June 30th. So far as this plaintiff was concerned, undoubtedly on July 3d, after the defendants attempted to repudiate their contract and the escrow-holder decided to act upon their instructions not to comply with the order for payment of plaintiff's commissions, and notified plaintiff to that effect, the plaintiff had a cause of action. But it was contingent under the terms of the agreement upon the "consummation" of the escrow. The evidence as to the exact date on which the escrow may be deemed to have been consummated is not clear nor conclusive, but it establishes that it was consummated subsequent to July 3d, the

date on which the plaintiff received his license; and, further, that the escrow did not "fail," and therefore that at the time plaintiff's cause of action arose he was a licensed broker. The amended complaint was verified on July 26, 1923, at which time plaintiff's cause of action had accrued and he had received his license. Respondents cite *Houston* v. *Williams,* 53 Cal. App. 267 [200 Pac. 55], but so far as that case applies to the case at bar, it only lays down the doctrine that plaintiff must be a duly licensed broker at the time the alleged cause of action arises.

■ The other point raised on this appeal is as to defendant Lane's liability under the contract, notwithstanding defendant Norman was not authorized *in writing* to sign it on Lane's behalf. Among other things this contract provides "for your (plaintiff's) services rendered in this transaction, I.hereby agree for myself and for C. M. Lane, to pay to you the sum of $3,250, which is to be your fee in full for your services, said commission to be paid through escrow." The evidence establishes that Norman was the agent of Lane: "Q. He (Norman) acted for you in this escrow transaction, did he not? A. With my approval. Q. You mean you gave approval of the instructions given then? A. No; I didn't say that; it was with my approval that he should act as my agent." The evidence shows that Lane knew that Norman purported to act as his agent in contracting to pay plaintiff a commission; that Lane permitted Norman to act and to hold himself out as his authorized agent in these transactions, and that he knew that plaintiff on the supposition and in the belief that he was duly authorized, was exerting himself to bring about the consummation of the transaction, and he (Lane) knew at least of some of the services he was rendering to this end; that Lane knew that plaintiff was relying upon Norman's authority to instruct the escrow-holder to pay plaintiff's commission, and also that Lane accepted the benefit of these services rendered by plaintiff, and defendant Lane is estopped to deny his authority. Defendant Lane cannot now maintain the unjust and unwarrantable defense, under the statute of frauds (Civ. Code, § 1624), that he did not in writing authorize Norman, his agent, to sign plaintiff's authority. Respondents attempt to distinguish *Blood* v. *La Serena Land & Water Co.,* 134 Cal. 361 [66 Pac. 317], by

pointing out that the estoppel there was based upon fraud, which is not an element in the case at bar. It is true that it was not pleaded in the case at bar, but the court says in the cited case (page 362): "He (plaintiff) successfully makes out a *prima facie* case and may *without pleading it* use the evidence in estoppel to prevent the corporation from maintaining what, as against its acts, would be an unjust and unwarrantable defense." The court further says (page 367): " . . . The law does not allow a corporation to retain the benefits which it has received on the contract and escape liability upon it," and cites authorities upon this proposition, which is elementary.

The judgment is reversed.

Works, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 6, 1928, and a petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 6, 1928.

All the Justices concurred.