[L. A. No. 16070. In Bank.—January 27, 1941.]

FEWEL & DAWES, INC. (a Corporation), Respondent, v. FRANKLIN L. PRATT, Appellant.

Hugh Ward Lutz for Appellant.

Hulen C. Callaway and Joe Crail, Jr., for Respondent.

TRAYNOR, J.—The appellant, Franklin L. Pratt, a licensed life insurance broker, had written several policies of life insurance for John G. Bullock of Los Angeles. In 1928 Bullock decided to take out additional life insurance amounting to $150,000 under an arrangement that would enable his son-in-law, Richard W. Fewel, to receive half of the commissions. Fewel was in debt to Bullock, and the latter wanted him to earn a share of the commissions so that he could meet his obligations. On July 10, 1928, Pratt and Fewel met in Bullock's office to make arrangements for working together. Pratt refused to work with Fewel's associates and insisted that the agreement be with Fewel alone. Fewel maintained that he could not work without his associates. When they finally agreed to work together and to divide the commissions so earned, they went to the office of Pratt who executed the following writing:

"July 10, 1928

"Mr. Richard W. Fewel,
 "716 South Spring St.,
 "Los Angeles.
"Dear Mr. Fewel:

"This is to confirm our verbal understanding of this date that we will work together in the purchase of insurance for Mr. John G. Bullock, on the basis of an equal division of the commissions.

"Very truly yours,
 "F. L. P."

Fewel accepted this writing as embodying the terms of the agreement and there is no question as to its authenticity.

Neither at that time nor since was Fewel licensed as an insurance broker or agent. At the time of the agreement, however, he was planning to organize a corporation to carry on an insurance business. His plans materialized with the incorporation of Moore, Fewel & Company on July 30, 1928, which was duly licensed as an insurance broker on August 10, 1928. On September 1, 1928, Fewel, an officer and director of this company, assigned to it his interest in the agreement with Pratt. The company subsequently assigned its rights under the contract to its successor, Moore, Fewel & Devlin, Inc., which in turn assigned them to Moore, Fewel & Dawes. The latter subsequently changed its name to Fewel & Dawes, respondent herein. Richard W. Fewel has been at all times an officer of these corporations.

None of the life insurance policies contemplated by this agreement was secured until 1930. In 1930, 1931, and 1932, Pratt wrote various life insurance policies for Bullock with the cooperation of Fewel. On July 31, 1930, Pratt and Fewel made their first division of commissions. Pratt objected that the payment of commissions to Fewel would be illegal because the latter had no license. It was therefore agreed that Fewel should issue a receipt signed ''Moore, Fewel & Devlin by Richard W. Fewel'' to enable Pratt to show a legal transaction on his books. Pratt made out his check for the commissions to Fewel personally. Fewel deposited the check in his private account which he alone used. Other commissions were subsequently divided in the same manner, the last division being made on February 19, 1931. On September 15, 1933, John G. Bullock died. On December 15, 1935, Fewel & Dawes, the last assignee of Fewel's right to commissions under the agreement with Pratt, brought suit against Pratt for unpaid commissions. The trial court gave judgment for plaintiff, and defendant Pratt has appealed.

The trial court found that Fewel was acting on behalf of the corporation Moore, Fewel & Company in making the agreement with Pratt. There is, however, no substantial evidence that Pratt agreed to contract with an actual or contemplated corporation rather than with Fewel. Plaintiff has failed to sustain the burden of proving that Pratt gave the assent necessary to the completion of such a contract. On the contrary, it is undisputed that Pratt repeatedly insisted he would

not work with Fewel's associates and would enter into a contract only with Fewel individually. Fewel's statement that he could not work without his associates in no way establishes that Pratt contracted with Fewel and his associates as a corporation. The question is not how Fewel intended to carry on his business, but who were the parties to the contract. Fewel's statement could not make the corporation a party to the contract without Pratt's agreement. The terms of the contract set forth in the memorandum written by Pratt and accepted by Fewel make no mention of a corporation as party to the contract. They clearly indicate the contract to be between Pratt and Fewel as individuals.

 A finding of the trial court upon conflicting evidence will not be disturbed on appeal if there is evidence of a substantial character which reasonably supports the judgment. (*Herbert* v. *Lankershim,* 9 Cal. (2d) 409 [71 Pac. (2d) 220]; *Reese* v. *Smith,* 9 Cal. (2d) 324 [70 Pac. (2d) 933]; *Tobias* v. *Adams,* 201 Cal. 689 [258 Pac. 588]; *Lefrooth* v. *Prentice,* 202 Cal. 215 [259 Pac. 947]; *Thoreau* v. *Industrial Accident Commission,* 120 Cal. App. 67 [7 Pac. (2d) 767]; *Gamberg* v. *Industrial Accident Commission,* 138 Cal. App. 424 [32 Pac. (2d) 413]; *Gardiner* v. *Holcomb,* 82 Cal. App. 342 [255 Pac. 523]; *Houghton* v. *Loma Prieta Lumber Co.,* 152 Cal. 574 [93 Pac. 377]; *Field* v. *Shorb,* 99 Cal. 661 [34 Pac. 504]; *Felsenthal* v. *Warring,* 40 Cal. App. 119 [180 Pac. 67]; *White* v. *Greenwood,* 52 Cal. App. 737 [199 Pac. 1095]; *Elliott* v. *Market Street Ry. Co.,* 4 Cal. App. (2d) 292 [40 Pac. (2d) 547].) If, however, the evidence is so slight and tenuous that it does not create a real and substantial conflict the finding may be set aside. (*Ibid.*) "There must be more than a conflict of words to constitute a conflict of evidence. The contrary evidence must be of a substantial character, such as reasonably supports the judgment. . . . " (*Herbert* v. *Lankershim, supra.*)

 In the present case the only evidence in the entire record which tends to indicate that Pratt agreed to contract with Fewel on behalf of the corporation is the following statement by Fewel: "He said 'I don't want to do business with the corporation, but I will do business through your corporation with you.'" This statement, in itself contradictory and ambiguous, appears in the course of testimony by Fewel that Pratt insisted he would not do business with the corporation but only with Fewel personally. Nowhere

in Fewel's testimony is there an unequivocal statement that Pratt agreed to contract with the corporation or with Fewel on behalf of the corporation.

Against his ambiguous statement there stands not merely his other statements that Pratt would not do business with the corporation, and Pratt's testimony that he contracted with Fewel personally and not with the corporation; there stands also the written memorandum embodying the terms of the agreement, which makes no reference to the corporation but clearly states the contract to be between Pratt and Fewel as individuals, as well as the written assignment to the corporation in which Fewel openly refers to the contract as being between Pratt and himself. In this context Fewel's statement does not constitute evidence substantial enough to support the finding of the trial court.

▉▉ It is well established in California that a contract which requires the performance of unlawful acts is unenforceable. (Civ. Code, secs. 1608, 1667; *Levinson* v. *Boas*, 150 Cal. 185 [88 Pac. 825, 11 Ann. Cas. 661, 12 L. R. A. (N. S.) 575]; *La Rosa* v. *Glaze*, 18 Cal. App. (2d) 354 [63 Pac. (2d) 1181].) Former section 633aa of the California Political Code (now Insurance Code, sec. 1714) provided: "Any person who shall act or offer to act or assume to act as a life insurance broker or agent, unless licensed by the insurance commissioner as provided in this section . . . shall be guilty of a misdemeanor." On the facts presented, the contract under consideration was between Pratt and Fewel as an individual. Since Fewel was at no time licensed as an insurance broker or agent, he could not legally solicit insurance or receive commissions; therefore, neither he nor his assignees can enforce the contract. It is true that an unlicensed person is not precluded from recovering a commission if he secures such license by the time the contract is performed, although it was executed prior to the time he was licensed. (*Houston* v. *Williams*, 53 Cal. App. 267 [200 Pac. 55]; *Radich* v. *Cernokus*, 65 Cal. App. 452 [224 Pac. 124]; *Brenneman* v. *Lane*, 87 Cal. App. 414 [262 Pac. 400].) In the present situation, however, Fewel not only had no license at the time he entered into the contract, but never acquired one thereafter. All the acts which he performed under the contract were illegal and can therefore give rise to no enforceable obligation.

■ The subsequent assignment by Fewel to the corporation of his right to receive payments under the contract in no way purported to substitute the corporation in Fewel's stead as a party to the original agreement, nor did the assignee-corporation undertake to perform any of the duties under the agreement. The assignment read:

"Know all men by these presents: That I, Richard W. Fewel, of Los Angeles, California, for a valuable consideration, the receipt whereof is hereby acknowledged, do hereby sell, assign, transfer and set over unto Moore, Fewel & Company its successors and assigns, all my right, title and interest in and to any and all commissions and renewal commissions for life insurance policies written on the life of John G. Bullock and accruing to me under and by virtue of an agreement between Franklin L. Pratt and myself, providing for the payment of one-half of said commissions to me. September 1, 1928.

"(Signed) RICHARD W. FEWEL."

The wording of the assignment clearly indicates that Fewel was merely transferring to the corporation the right to receive payments of money in return for a valuable consideration. There is no assumption of obligations by the corporation. There is no novation effected whereby the corporation steps into Fewel's shoes as obligor under the contract. The obligations of the agreement remained with Fewel; he performed them, and it was his performance of them without a license which rendered the contract illegal.

The assignment clearly states that the contract was between Fewel as an individual and Pratt. No assignment of rights would have been necessary had Fewel made the contract on behalf of the corporation, for the latter could then simply have adopted the contract as its own. (Ballantine, Private Corporations, sec. 47.)

■ Pratt is not estopped from denying the validity of his contract with Fewel because he accepted receipts from Fewel in the name of the corporation to conceal the illegality of the transaction. An illegal contract cannot be ratified, and no person can be estopped from denying its validity. (*Colby* v. *Title Ins. & Tr. Co.*, 160 Cal. 632 [117 Pac. 913, Ann. Cas. 1913A, 515, 35 L. R. A. (N. S.) 813]; *Reno* v. *American Ice Machine Co.*, 72 Cal. App. 409 [237 Pac. 784]; *Wood* v. *Imperial Irr. Dist.*, 216 Cal. 748 [17 Pac. (2d)

128]; *Regan* v. *Albin*, 219 Cal. 357 [26 Pac. (2d) 475]; A. L. I. Restatement, Contracts, secs. 590, 598.)

■■ Defendant in his answer denied any liability under the contract. He introduced evidence at the trial showing that Fewel was at no time a licensed agent or broker. He moved in the trial court to vacate the judgment and to have judgment entered in his favor on the ground that the contract was illegal and hence unenforceable. In his brief on appeal he urged the illegality of the contract as grounds for reversal. There is therefore no basis for precluding him from raising the question of illegality on appeal. If the contract is illegal as a matter of law, this court may refuse to enforce it regardless of the pleadings of the parties. (*Morey* v. *Paladini*, 187 Cal. 727 [203 Pac. 760]; *Pacific Wharf etc. Co.* v. *Standard Am. Dredging Co.*, 184 Cal. 21 [192 Pac. 847]; *Endicott* v. *Rosenthal*, 216 Cal. 721 [16 Pac. (2d) 673]; *Kreamer* v. *Earl*, 91 Cal. 112 [27 Pac. 735]; *Dean* v. *McNerney*, 91 Cal. App. 206 [266 Pac. 975]; 6 Cal. Jur. 162; 4 Cal. Jur. Supp. 71, 72.)

The judgment of the trial court is reversed.

Edmonds, J., Gibson, C. J., and Houser, J., concurred.

CARTER, J., Dissenting.—I dissent.

I cannot agree with the conclusion reached in the opinion prepared by Mr. Justice Traynor for the reason that it is predicated upon an incorrect statement of the facts of this case as they appear in the record and as found by the trial court, and the rules of law relied upon in said opinion are not applicable to the factual situation as disclosed by the record and determined by the findings of the trial court.

In my opinion the judgment should be affirmed with the modifications hereinafter mentioned.

As a correct understanding of the facts is essential to the solution of every legal problem, I will state the facts of this case as they appear in the record and as found by the trial court. They are as follows:

During the early part of the year 1928, Richard W. Fewel was a partner in an insurance brokerage firm known as "Universal Underwriters." Fewel was married to John G. Bullock's daughter. Pratt approached Fewel around the 10th day of July, 1928, and suggested that between the two of them they could sell Bullock some additional life insur-

ance. Thereupon, Pratt gave Fewel a letter of that date agreeing to an equal division of commissions on such insurance as was purchased by Bullock. Fewel at the time was planning the organization of a new corporation to take over his insurance business. The organization of the corporation was completed July 25, 1928, under the corporate name of Moore, Fewel & Company. On September 1, 1928, Richard W. Fewel assigned the contract with Pratt covering the Bullock life insurance commissions to Moore, Fewel & Company, of which he was then an officer and stockholder. Moore, Fewel & Company were duly licensed as insurance brokers on August 10, 1928. The first policy of life insurance written for John G. Bullock was several months after August 10, 1928. Thereafter, Moore, Fewel & Company assigned the Pratt agreement to Moore, Fewel & Devlin, Inc., Ltd. (when a new corporation was formed to take in another partner), and Moore, Fewel & Devlin in turn assigned it to Moore, Fewel & Dawes. Moore, Fewel & Dawes changed its corporate name to Fewel & Dawes, Inc., the respondent herein. At all times prior to their respective assignments Richard W. Fewel was an officer of the aforesaid corporations.

Fewel informed Pratt at the time the contract was made of his intention to organize a new corporation to take over his insurance business and that the Bullock life insurance would be handled through the new company, although it would have his personal attention.

During the years 1930, 1931 and 1932, considerable insurance was written on the life of John G. Bullock, resulting in the collection by the defendant Pratt of commissions amounting to $23,074.29. It was part of the arrangement between the parties that Pratt would keep the records, collect the premiums and account to the plaintiff and its assignors for the commissions.

John G. Bullock died September 15, 1933. Prior to his death Bullock was unable to pay all the premiums on a large amount of life insurance purchased through Pratt and the respondent's assignors after the agreement was entered into. An arrangement was made between Pratt and the respondent's assignors whereby certain portions of the commissions earned would be advanced to Bullock and used in keeping the insurance in force.

At the time of Bullock's death there was $4,150.83 due Pratt and the respondent on account of the advances so made,

for which Pratt filed a claim against the Bullock estate. This claim was approved and ordered paid by the probate court on December 12, 1935, the same date this action was instituted.

Prior thereto Pratt made a division of commissions, and the sum of $2,687.75 was paid to respondent's assignors and receipted therefor by Moore, Fewel & Devlin, Inc., Ltd., to Pratt. No other amount was ever paid to the respondent, or its assignors. Pratt was not required to account for the commissions prior to Bullock's death for the reason that Fewel knew a large portion thereof was being advanced back to Bullock in order to enable him to pay premiums. After Bullock's death and up to the time of institution of the action Pratt refused to account for the reason, among others, that all of the commissions had not been collected.

At the conclusion of the trial, the trial court found "that the contract was made by Richard W. Fewel as an officer and agent of Moore, Fewel & Company and was subsequently performed by him as an officer and agent of the other corporations owning it under the respective assignments."

The trial court further found "that at all times during the performance of the contract the respondent and its corporate predecessors in title thereto were duly licensed insurance brokers and entitled to one-half of the commissions derived from insurance written on the life of John G. Bullock after the date of the contract; that an accounting was had in open court wherein it was determined that the gross amount of commissions was $23,074.29; and that after crediting the amounts theretofore paid by Pratt to respondent's assignor, there was due the plaintiff herein from Pratt the sum of $8,849.39 as its share of said commissions." The court found against the appellant Pratt on all of his defenses.

The trial court further found "that the appellant Pratt ratified the assignment of the agreement by accepting receipts from a subsequent assignee, Moore, Fewel & Devlin, Inc., Ltd."

Judgment was entered in favor of plaintiff for the sum of $8,849.39, with interest in addition thereto amounting to $1993.30.

The first attempt by the defendant to assert the illegality of the agreement of July 10, 1928, was on a motion to vacate

the judgment and to have a judgment entered in his favor. In support of such motion, the defendant contended that the agreement of July 10, 1928, was contrary to express statute and void for the reason that Fewel was not at that time a duly licensed and authorized insurance broker. This motion was denied by the trial court and defendant appealed.

It is not true as stated in the majority opinion that:

"There is no substantial evidence that Pratt agreed to contract with an actual or contemplated corporation rather than with Fewel. Plaintiff has failed to sustain the burden of proving that Pratt gave the assent necessary to the completion of such a contract. On the contrary, it is undisputed that Pratt repeatedly insisted he would not work with Fewel's associates and would enter into a contract only with Fewel individually. Fewel's statement that he could not work without his associates in no way establishes that Pratt contracted with Fewel and his associates as a corporation."

In making the foregoing statement, the author of the majority opinion has disregarded the findings of the trial court which found the facts directly in conflict with said statement. These findings are supported by substantial evidence in the form of testimony of witnesses and inferences which the trial court was justified in drawing from the testimony and conduct of the parties.

So that there will be no question as to the testimony upon which the foregoing statement is based, I will quote the testimony of the witnesses *verbatim*. Fewel testified as follows:

"A. I will say this—that I was authorized at all times to negotiate with Mr. Bullock and Mr. Pratt, from the very inception they knew I was handling it; that Mr. Pratt didn't want anything to do with Mr. Moore, and I told him so; he told me he did not care to do business with Mr. Moore, he wanted to do business with me; that I was Mr. Bullock's son-in-law; he said, '*I don't want to do business with the corporation, but I will do business through your corporation with you.*' I said, 'All right.'

"A. No, he said he didn't want to do business with Mr. Moore and my associates; *that he didn't care if the corporation or my company or my associates participated,* but he wanted the contract with me; that I was Mr. Bullock's son-in-law and he did not see any reason whatever for them to

come into the picture. I explained to him on the first matter, as I told you before, *I told him that I was associated with these people, and whatever I did I did it with them.*"

Defendant Pratt testified:

"I told Mr. Bullock, in Mr. Fewel's presence, that I couldn't legally do what we had agreed to do, but that I didn't want to be the beneficiary of that inability to do a thing I had contracted to do in good faith and that I would give any broker or anyone qualified legally to receive the commissions the amount involved. Q. —*So therefore you paid it to Moore, Fewel & Devlin? A. —Mr. Fewel said that if I would give the commissions to Moore, Fewel & Devlin he would arrange to see that he got the credit over there. Q. —Well, was that agreeable to you? A. Yes, so far as giving away commissions is agreeable.*"

As I read the foregoing testimony I am forced to the conclusion that the trial court was justified in concluding as it did conclude that Fewel advised Pratt that the agreement between them was to be performed by Fewel and his associates who were later organized into a corporation which immediately became licensed as an insurance broker; that Pratt dealt with said corporation by paying to it one-half of the premiums which he collected on insurance policies written for Bullock; that Pratt thereby ratified the assignment of said agreement from Fewel to the corporation and by Moore, Fewel & Company, a corporation, to its successors in interest.

The majority opinion also states that "It was therefore agreed that Fewel should issue a receipt signed 'Moore, Fewel & Devlin by Richard W. Fewel' to enable Pratt to show a legal transaction on his books. Pratt made out his check for the commissions to Fewel personally. Fewel deposited the check in his private account which he alone used. Other commissions were subsequently divided in the same manner, the last division being made on February 19, 1931."

The foregoing statement is only half true as the record shows without contradiction that Fewel had an understanding with the board of directors of the corporations, of which he was a director and officer, that while the portion of the premiums on Bullock's life insurance policies to which these corporations were entitled were to be paid to him and by him to Bullock on an indebtedness which Fewel owed to Bullock, Fewell would be charged on the books of the corpo-

ration with such premiums, and his account with the corporation would be adjusted when the subsequent premiums were paid. In this regard Fewel testified:

"I was vice-president, I believe; and I spoke to them—under my obligation to Mr. Bullock that I owed him so much money, and that I had an understanding with him that I would take these profits, the first year's profits and give them to him against my indebtedness, but that I would give the renewals to them, and they could charge me back for whatever I withdrew against my account, which was the current account.

"Q. You mean by that whenever you gave any of these commissions to Mr. Bullock, that the brokerage firm charged you with that money? A. They agreed to such an arrangement and we would work it out sooner or later. I explained it was going to be a big amount of insurance and renewals; and I was the only one in the corporation that was not drawing a sizable salary, and I thought I was entitled to something, and it had to be along this line to work it out.

"Q. Did they agree with that? A. They agreed with that—Mr. Bullock understood it thoroughly.

"A. I testified that I later had an agreement with Mr. Moore, who was attending to the life insurance end of our corporation—I informed him that I was heavily indebted to Mr. Bullock; that I was to take no compensation out of the company; that he and Mr. Devlin were drawing good salaries; that Mr. Bullock felt that I should get something out of it and pay him on account of what I owed him; and I thought we should have some kind of understanding with them whereby I could return those first year's premiums to Mr. Bullock, to credit my account; they would get the renewals, and eventually they could charge the amount I gave Mr. Bullock and eventually we would wipe it out on other commissions we wrote.

"Q. When did you have the understanding with Moore, Fewel & Company? A. The first time I talked it over, I think, was with Mr. Moore and Mr. Dawes; and they said they could not agree on it until we had a board of directors' meeting; and I talked to the boys in the board of directors' meeting one day and they agreed that that was fair enough."

The only conclusion which one can draw from the foregoing testimony is that whatever service Fewel rendered in

connection with the performance of the agreement between himself and Pratt of July 10, 1928, was rendered and performed by him as an officer and director of the corporations to which said contract had been assigned. These corporations were licensed as insurance brokers at the time all of the insurance policies were issued to Bullock and at the time the premiums became due thereon with the exception of two of said policies hereinafter mentioned. In view of the findings of the trial court, which are amply supported by substantial evidence in the record, the facts of this case do not warrant the application of the rule enunciated in the cases of *Levinson* v. *Boas,* 150 Cal. 185 [88 Pac. 825, 11 Ann. Cas. 661, 12 L. R. A. (N. S.) 575], and *La Rosa* v. *Glaze,* 18 Cal. App. (2d) 354 [63 Pac. (2d) 1181], relied upon in the majority opinion.

The leading case of *Levinson* v. *Boas, supra,* involved a pawn broker who was operating a pawn shop in violation of the law. The court stated in its opinion: ''The respondent, neither at the time of making loans or at any time, had a license to carry on or conduct the business of pawn broker.''

Likewise, in the case of *La Rosa* v. *Glaze, supra,* the plaintiff in that action never at any time had a license as agent, commission merchant, or dealer in farm products, as required by section 1263 of the Agricultural Code.

It has been uniformly held that an unlicensed person is not precluded from recovering a commission, if he had such license at the time the contract was performed and the cause of action arose, although the contract under which he seeks to recover commissions may have been executed prior to the time he was licensed. (*Houston* v. *Williams,* 53 Cal. App. 267 [200 Pac. 55]; *Radich* v. *Cernokus,* 65 Cal. App. 452 [224 Pac. 124]; *Brenneman* v. *Lane,* 87 Cal. App. 414 [262 Pac. 400].)

In each of the above-mentioned cases, a real estate broker's contract was involved. A contract authorizing a real estate agent to sell real property on a commission basis had been entered into before the agent had obtained a license pursuant to the law of this state, but a license had been obtained by him before the sale was consummated and his right to the commission had accrued. It is true that the court in the Houston case predicated its opinion upon the wording of section 20 of the act, which provides that no person engaged in the business or acting in the capacity of a real

estate broker shall bring or maintain any action in the courts of this state for collection of compensation for the performance of any of the acts mentioned in section 20 of the said act without alleging and proving that said person was a duly licensed real estate broker at the time the alleged cause of action arose.

In the case of *Davis* v. *Chipman,* 210 Cal. 609, at page 622 [293 Pac. 40], this court, in referring to the case of *Houston* v. *Williams, supra,* said:

"In *Houston* v. *Williams, supra,* it was held that a limitation upon this rule was made by section 20 of the act, and that the rule in all its rigor should not apply to a person holding a broker's license at the time he consummated a sale of real property even though he had no such license at the time he entered into a contract with the owner to pay him a commission. The court there held that a reasonable construction of the act would permit such a holding. While agreeing with the appellate court in this ruling, we are further of the opinion that it would be a most unreasonable construction of the statute to hold that it permitted an action to be maintained as in the present proceeding where the plaintiff had no license at the date the sale of the property was effected, or during any of the time during which he rendered the services for which he seeks to recover, and only secured such a license practically a year after the sale was effected. As plaintiff held no broker's license at the time the sale involved herein was consummated, he is not entitled to recover compensation for his services, all of which were rendered prior to his securing any license."

The inevitable conclusion at which one must arrive from a reading of the above-mentioned cases is that it was the intention of the legislature to denounce the performance of certain acts by a person whom the law required to procure a license before such acts can be performed. In the case of a real estate broker, it was the sale of real estate on a commission basis; in the case of an insurance broker, it was the solicitation or sale of insurance. In other words, it was the doing of something in connection with the conduct of the business of such agent or broker which constitutes a violation of the statute, instead of merely agreeing to perform such acts at some future date, when the person performing the same has complied with the requirements of the law with respect to obtaining the license.

The record conclusively shows that the respective assignee corporations to which the agreement was transferred were licensed insurance brokers throughout the entire time of performance under the agreement, except as hereinafter stated. Moore, Fewel & Company was licensed from August 10, 1928, to June 30, 1930; Moore, Fewel & Devlin, Inc., Ltd., from July 1, 1930, to June 30, 1932; Moore, Fewel & Dawes from July 1, 1932, to October 6, 1933. On October 11, 1933, Moore, Fewel & Dawes, Inc., Ltd., changed its corporate name to Fewel & Dawes, Inc. There was a lapse in its license from October 6, 1933, to November 10, 1933. Performance under the agreement having come to an end with the death of John G. Bullock, and respondent being a duly licensed life insurance broker at the time of performance and at the commencement of this action, it is not material that there was a lapse in the corporation's license from October 6, 1933, to November 10, 1933. Moore, Fewel & Dawes was, however, not licensed when two policies were issued February 17, 1932. Those premiums should be eliminated from the judgment.

The agreement of July 10, 1928, was a continuing agreement or contract and there is nothing to show that such contract was not to exist as long as Pratt procured insurance under said agreement. The evidence shows that Bullock contemplated taking out $150,000 additional insurance at the time the written agreement was executed. Pratt had no option to terminate the contract at will. There is no evidence that the contract was terminated on February 19, 1931, as contended by appellant. The contract could only be terminated by the mutual consent of all parties. Findings number 27 and number 28 to the effect that the contract was not terminated are supported by the evidence.

There is no merit in the contention that a proper accounting was not had between the parties. An accounting was held and the record fails to show any prejudice to appellant with the exception. of the item of interest which was allowed. Respondent introduced in evidence a record containing a list of the companies, the policies and premiums and the commissions which were earned. Appellant reserved the right to check the correctness of this record, and to offer evidence of any error which it might contain. The court found that appellant was paid $23,074.29, as commissions under the agreement, and that respondent's share of 50 per cent thereof amounted to $11,537.14. The court also found

that respondent's assignors had been paid by appellant on account of its share of said commissions only the sum of $2,-687.75, leaving a balance due to respondent under the agreement of $8,849.39. That finding is supported by the evidence, except as hereafter stated.

It is true that the corporate name of Moore, Fewel & Devlin was changed in 1932 to Moore, Fewel & Dawes. The contract involved in this case was assigned to the last-mentioned corporation January 12, 1932, which was not licensed as a broker until July 1, 1932. During the interval between the date of assignment of the contract to the last-mentioned corporation and the issuance of its broker's license, Pratt procured two policies on the life of Bullock of $25,000 each and two renewals of premiums, on or about February 17, 1932, from which commissions aggregating the sum of $2,-146.81 were received by Pratt. While the assignor's license was in full force during that interval, I assume that since title to the contract was then in the name of Moore, Fewel & Dawes, which was not then licensed as a broker, it would not be entitled to share in such commissions. The judgment of $8,849.39 should therefore be modified by subtracting therefrom said sum of $2,146.81.

Findings numbers 24 and 25 with respect to the interest allowed are not supported by the evidence. The record fails to disclose the dates of payments of commissions to appellant. At least it is impossible to determine which dates refer to the specific times when the commissions were received by the appellant. The record therefore fails to show that respondent is entitled to interest on unpaid commissions which were received by the appellant. The judgment should also be modified by disallowing the items of interest in the sum of $1993.30.

There is no merit whatever in appellant's contention that the contract of July 10, 1928, was not assignable, or that he could not be compelled to recognize the assignee thereof, as the evidence is undisputed that appellant dealt with the corporate assignees of Fewel, and accepted receipts signed by said assignees for commissions paid Fewel, pursuant to said contract. The conclusion is therefore inescapable that even though appellant did not contemplate contracting with the corporate assignees of Fewel at the time he entered into said agreement, he is, nevertheless, estopped by his conduct from contending that the assignment of the agreement by Fewel

terminated the contract and that the assignee acquired no rights thereunder by virtue of the various assignments thereof.

As I view this case, however, in view of the findings of the trial court, I am of the opinion that the contract of July 10, 1928, was made by Fewel on behalf of the corporation which he contemplated organizing, and the assignment thereof by Fewel to the corporation was a mere formality and was not essential to secure to said corporation the rights to which it was entitled under said contract.

The evidence is sufficient to support the findings of the trial court that said contract was made by Fewel as an officer and agent of Moore, Fewel & Company, and was subsequently performed by him as an officer and agent of the other corporations to which it was assigned.

Appellant has attempted to raise the proposition of *res adjudicata* against the judgment recovered by respondent in this case. This proposition is presented by way of a motion to take additional evidence in this court, pursuant to section 956a of the Code of Civil Procedure.

The judgment which appellant contends is *res adjudicata* of the judgment herein appealed from was entered September 8, 1937, approximately 15 months after the entry of the judgment in the case at bar; said judgment of September 8, 1937, arose out of the following factual situation:

About December 12, 1933, respondent levied an attachment upon certain funds held by the executors of the estate of John G. Bullock. After entry of judgment on June 24, 1936, no stay having been obtained by appellant, execution was levied by the respondent against these same funds. The executors thereupon filed an action of interpleader, and paid the moneys into court, alleging that numerous claims had been made thereto by various creditors of said Franklin L. Pratt. Respondent filed an answer and cross-complaint in this action, setting forth its claim to the interpleaded fund. The cross-complaint sets forth and alleges a prior right to the interpleaded fund for the reasons that, (1) The rights of other claimants were based on certain assignments from Pratt which constituted fraudulent conveyances, and (2) The fund was impressed with a constructive trust therefore no assignments could be validly made by Pratt.

The court in this interpleader action found that Fewel & Dawes, Inc., was entitled to recover said moneys sub-

ject to the right of two other claimants, who held valid assignments from Pratt. The court also found that the interest of Fewel & Dawes, Inc., existed, however, only by virtue of the levy of the writ of attachment and the subsequent levy of a writ of execution. As to the second cause of action, which was predicated on the theory of a constructive trust in the fund for the benefit of respondent corporation, the court found that no such trust existed. The findings of fact determined that the contract of July 10, 1928, was not made with or on behalf of Moore, Fewel & Company; that, on the contrary the agreement was made with Richard W. Fewel and that it was void, as he was not a licensed life insurance agent or broker at the time of said agreement, nor at any time thereafter; that the claim for the funds in question from the estate of John G. Bullock, deceased, was properly made in behalf of Franklin L. Pratt. The judgment in this interpleader action was entered on November 8, 1937, and became final after time for appeal had elapsed. Appellant sought to introduce that final judgment as evidence in this case to establish it as *res adjudicata* and to create an estoppel.

I am of the opinion it was not the court's province in the suit of interpleader to challenge the judgment upon which execution had issued. The sole issue which was presented to the court in that cause of action was neither involved in nor determinative of the issues in the present suit. The issue before the court in that action raised the question as to whether the appellant, Pratt, was a trustee of the interpleaded fund, and as such, whether he violated his duty as trustee by assigning that fund to various claimants. A finding that he was not a trustee of said fund for the benefit of the respondent herein did not determine the issues presented in this suit for an accounting. That final judgment, therefore, is not *res adjudicata* of the issues presented in this case.

An examination of the cases cited by appellant fails to disclose any precedent for the application of *res adjudicata* or estoppel under the circumstances of this case.

I am forced to the conclusion, after a very careful examination of the record and briefs in this case that every consideration of equity and justice is on the side of the plaintiff and respondent in this case, and that the defendant and appellant is attempting to evade an obligation which he con-

tracted in good faith to perform and which he did perform until the death of Bullock, but when he saw no further opportunity to advance his own interests by continuing to secure the cooperation of Fewel and his corporation, he repudiated his obligation and is now attempting to resort to technical defenses to defeat a just obligation which he contracted in good faith, with full knowledge of all the facts and circumstances surrounding the arrangement which he himself made with Fewel and which the trial court found had been faithfully executed by Fewel and his successors in interest. To now permit the defendant to prevail under such circumstances, will, in my opinion, result in a miscarriage of justice which should not be countenanced by any court.

The judgment should be modified by striking therefrom the commissions on the policies and renewals of February 17, 1932, aggregating the sum of $2,146.81, and the items of interest allowed in the sum of $1993.30, and as so modified, the judgment should be affirmed.

Curtis, J., and Shenk, J., concurred.