[No. A055436. First Dist., Div. Three. July 22, 1992.]

Estate of ROSARIO LOPEZ, Deceased.
WILLIAM LOPEZ et al., as Executors, etc., Petitioners and Respondents,
v.
HENRY TONG, Objector and Appellant.

## COUNSEL

Bruce B. McKee for Objector and Appellant.

William F. Bosque, Jr., for Petitioners and Respondents.

## OPINION

**WERDEGAR, J.**—Henry Tong appeals from an order of the superior court sitting in probate, by which he was denied a commission on the sale of real property from the estate of Rosario Lopez (William Lopez and Carmen J. Miller, executors). We hold Tong is entitled to the commission because his broker's license, although lapsed at the time the buyer was procured and the sale confirmed, had been renewed before the sale was consummated. We therefore reverse the order.

### FACTS

On May 13, 1991, the executors filed a petition for confirmation of sale of real property of the estate. The amount bid was $560,000. According to the confirmation petition, the buyers were procured by Optima Realty, which held an exclusive agency contract with the estate for sale of the property.

At the June 5, 1991, confirmation hearing, Hsung-Ying Liang made a successful overbid of $602,000. Although Liang bid on his own behalf, and no broker or agent appeared for him, he entered Henry Tong's name on a written bid form as the person entitled to receive a commission on the sale. Optima Realty's name also appears, typed, on the preceding line. According to Liang's declaration, he was given the preprinted form by the estate's attorney, with Optima Realty already entered. At the conclusion of the

hearing, the sale to Liang was confirmed; a commission of $30,100 was approved, "to be held in escrow pending determination by the court of the parties entitled."

Liang declared that Tong had represented him since about July 1990 and had made two previous purchase offers on his behalf. He first saw the estate property by himself at an open house in May 1991; he then returned with Tong. After discussion with Tong and on Tong's advice, he decided to submit an overbid. Tong declared he showed Liang the property and prepared documents for the sale.

Tong had been licensed as a broker since 1987, but his license expired on February 8, 1991, for nonpayment of fees. Tong mailed the necessary fees and record of continuing education on May 30. His renewal certificate was issued June 20, 1991.

The sale was completed on August 8, 1991. On September 10, 1991, the court found: ". . . Henry Tong is not entitled to any commission from the proceeds of the sale of the above named property as he was acting in the capacity of a real estate broker without a license when the cause of action arose." The court also found Optima Realty was entitled to a commission of $28,000.

## DISCUSSION

Business and Professions Code section 10136 provides: "No person . . . acting in the capacity of a real estate broker . . . shall bring . . . any action . . . for the collection of compensation . . . without alleging and proving that he was a duly licensed real estate broker . . . at the time the alleged cause of action arose." Despite the statute's reference to an "action" by the broker, it has been held to apply to a broker's application in probate court for a commission. (*Estate of Prieto* (1966) 243 Cal.App.2d 79, 85 [52 Cal.Rptr. 80] [guardianship proceeding].) Tong was unlicensed at the time the sale was arranged and confirmed, but licensed by the time it was completed; the chief question presented here is thus whether his cause of action arose at the earlier time or the later.

"A broker's action for a commission arises when the commission becomes due and payable . . . ." (*Cline* v. *Yamaga* (1979) 97 Cal.App.3d 239, 245 [158 Cal.Rptr. 598].) "Generally speaking, a real estate broker has earned his commission when he has brought to the vendor a purchaser who is ready, willing and able to buy the property upon the terms on which the agent is authorized to sell, or when a written contract upon any

terms acceptable to the seller has been entered into with a purchaser originally brought to the vendor by the agent. [Citation.] It is not necessary for the sale to be completed, under the foregoing rule, for the broker to be entitled to his commission. [Citation.]" (*Cochran* v. *Ellsworth* (1954) 126 Cal.App.2d 429, 438 [272 P.2d 904]; accord, 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 279, pp. 276-277.)

The general rule does not apply, however, where the broker's contract specifies additional conditions on the payment of commission. In *Cochran* v. *Ellsworth*, *supra*, for example, a broker sued for his commission on a contract which provided for payment of commission " 'in the event of consummation of the sale,' " the first payment to be made " 'at the close of escrow.' " (126 Cal.App.2d at p. 439.) The appellate court held consummation of the sale required payment of the purchase price and conveyance of title. Those events had never occurred; the broker was therefore not entitled to a commission. (*Id.* at pp. 440-441; see also 2 Witkin, *op. cit. supra*, § 283, pp. 280-281.)

■ Where the listing or sale contract provides for a commission only upon completion of the sale, the broker's cause of action does not arise, for purposes of Business and Professions Code section 10136, until the sale is completed. Thus in *Brenneman* v. *Lane* (1927) 87 Cal.App. 414, 415-416 [262 P. 400], the contract provided for a commission to be paid when certain property was deeded to the buyer and the escrow was "consummated." The deeds were recorded on June 29 or 30, at which time the broker was unlicensed. Payments from escrow, however, were not completed until after July 3, the date on which the broker received his license. (*Id.* at pp. 416-417.) Therefore, the court held, "at the time plaintiff's cause of action arose he was a licensed broker," and the cause of action was not barred under the predecessor statute to Business and Professions Code section 10136. (*Id.* at pp. 415, 417.)

■ Tong's entitlement to a commission in this case is governed not by contract, but by statute. Probate Code section 10161, subdivision (a) allows the probate court to approve a commission constituting "reasonable compensation" for an agent's or broker's services to the estate. Subdivision (b)(2) provides that an agent or broker who does not hold an exclusive contract with the estate is entitled to a commission if he or she procures a successful overbidder. Probate Code sections 10162-10165 detail how commissions are to be divided among agents and brokers providing various services in the sale.

Probate Code section 10160 provides that an estate is not liable to a broker for a commission "unless the following requirements are satisfied: [¶] (a) An

actual sale is made. [¶] (b) If court confirmation or approval is required, the sale is confirmed or approved by the court as required. [¶] (c) The sale is consummated."

Probate Code section 10160 has the same effect in this case as the contractual conditions had in *Cochran* v. *Ellsworth, supra,* 126 Cal.App.2d 429 and *Brenneman* v. *Lane, supra,* 87 Cal.App. 414; unless its requirements, including consummation of the sale, were met, Tong was not entitled to a commission from the estate. His commission was therefore not "due and payable" (*Cline* v. *Yamaga, supra,* 97 Cal.App.3d at p. 245), and his cause of action therefore did not arise, until the sale was consummated by conveyance of the property and payment of the purchase price. It is undisputed Tong was licensed at that time.

The history of Probate Code section 10160's consummation requirement supports our holding. A predecessor statute, Code of Civil Procedure section 1559, relied upon and discussed in *Wilson* v. *Fleming* (1930) 106 Cal.App. 542, 548 [289 P. 658], provided that an estate incurred no liability to an agent holding a contract with the estate " '. . . unless an actual sale is made and confirmed to the purchaser procured by said agent.' " The *Wilson* court held the statutory reference to an "actual sale" required completion of the sale; the probate court thus properly made the broker's commission contingent upon full payment of the purchase price. "We think this provision was expressly adopted for the purpose of protecting an estate from any liability for the payment of such a commission, in any case where the purchaser fails to complete the deal, even though the same has been confirmed by the court . . . . Any other interpretation would open the door to innumerable frauds and to the frittering away of estates while they are in the hands of and under the protection of the court, both where the sale is fraudulent, and where it is, though honestly made, to a purchaser who cannot or will not complete the transaction." (*Id.* at p. 549.)

Code of Civil Procedure section 1559 was repealed in 1931, but the pertinent language was continued in former section 760 of the Probate Code. (Stats. 1931, ch. 281, §§ 760, 1700, pp. 636, 687.) *Wilson* v. *Fleming's* interpretation of Code of Civil Procedure section 1559 was approved and applied to Probate Code section 760 in *Estate of Rule* (1944) 25 Cal.2d 1, 16 [152 P.2d 1003, 155 A.L.R. 1319], disapproved on other grounds in *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866, footnote 2 [44 Cal.Rptr. 767, 402 P.2d 839].

In 1987, Probate Code section 760 was repealed and section 10160 was added. (Stats. 1987, ch. 923, §§ 39, 93, 10160, pp. 2986, 3014, 3056.) The

current version of section 10160 is unchanged from that enacted in 1987. A 1990 Law Revision Commission Comment notes that it is derived in part from former Probate Code section 760, and that subdivision (c) "makes clear that the sale must be consummated before the estate is liable to the agent, broker, or auctioneer," i.e., the property must be conveyed, and the seller must receive the purchase price, with any deed of trust or mortgage. The comment cites *Estate of Rule, supra*, 25 Cal.2d 1 and *Wilson v. Fleming, supra*, 106 Cal.App. 542. (Recommendation proposing New Prob. Code (Dec. 1989) 20 Cal. Law Revision Com. Rep. (1990) p. 1662.)

As in *Wilson v. Fleming, supra*, 106 Cal.App. 542, Tong's commission was, by statute, conditioned upon completion of the sale. The law, even more clearly now than at the time *Wilson* was decided, is designed to protect decedents' estates from the fraudulent depredations and unintentional losses that might result if commissions could be paid before a sale was completed. Under Probate Code section 10160, a broker's work is not done, and his or her commission is not earned, until the transaction is consummated. The broker thus has a strong incentive to make every effort to ensure the sale goes through; otherwise he or she risks receiving nothing for work performed to that time. Tong took that special risk and apparently performed whatever tasks were necessary to see the sale through to completion. The lapse of his license at an earlier time does not prevent him from recovering a reasonable commission.

Citing *Estate of Rule, supra*, 25 Cal.2d 1, the executors argue any right Tong might have to a commission became fixed and certain at the time the sale was confirmed. *Rule* does not support this position. In the portion of the opinion the executors rely upon, the *Rule* court held only that the executors of Rule's estate acted within their statutory authority when they agreed to pay a commission on a bid that had already been returned to court for confirmation. The burden of the discussion is that *before* confirmation it cannot be said a purchaser has been secured for the property; nowhere does the court state or imply that a commission is certain or secure upon confirmation. (*Id.* at pp. 15-16.) As already noted, moreover, the court quoted with approval *Wilson v. Fleming*'s holding that a sale of real property from an estate is not complete until the property is conveyed and the purchase price paid. (*Estate of Rule, supra*, at p. 16.)

Without additional citation of authority, the executors assert completion of the sale determines only the timing of payment of the commission, not the broker's right to it. They argue: "If after the confirmation the executors had defaulted in the sale contract through their own fault, the right to the commission would have remained binding and valid against the executors."

This claim is simply inconsistent with the plain language of Probate Code section 10160, under which the estate "*is not liable*" for a commission "*unless*" the sale is consummated. (Italics added.)

■ The executors cite Business and Professions Code section 10130, which makes it unlawful to act as a real estate broker without a license, as authority for denying the commission. This provision, however, must be read together with Business and Professions Code section 10136, which specifically regulates the circumstances under which a broker may obtain compensation. As was stated on this exact point in an early case construing the act from which both sections are derived, "Manifestly the legislature herein undertook to prescribe an essential condition of recovery but limited its operation to the time when the cause of action arose. By implication any earlier period was excluded. It is a reasonable construction of the act to hold that it is unlawful for anyone to engage in the business of a real estate broker without having secured a license, but he is not precluded from recovering compensation for his services if he had such license at the time his cause of action arose, although his contract may have been executed prior to that time when he had no license." (*Houston* v. *Williams* (1921) 53 Cal.App. 267, 271 [200 P. 55]; see also *Davis* v. *Chipman* (1930) 210 Cal. 609, 621-623 [293 P. 40] [approving *Houston* holding, but declining to apply it to broker who had no license at the time all his services were performed and the sale consummated].)

In addition, the executors claim some of the work leading to the commission was performed by an unlicensed salesperson, to wit, Tong's wife, Lily Tong, who was licensed as a salesperson but was not registered as associated with Tong's brokerage. Contrary to the claim made by the executors, there is no evidence Lily Tong acted as agent for Liang. In a declaration the executors never filed, but which was sent by Optima Realty to the trial judge and included as an exhibit in points and authorities filed by Tong, an Optima agent states that Lily Tong came to see the house at the same time Liang did. Even that declaration, however, does not show Lily Tong was acting as Liang's agent; to the contrary, Lily Tong told the declarant she was interested in the property for herself. At a later time, according to the declaration, she said she was no longer interested for herself, but that her friend was interested and had been shown the property by another agent. Similarly, the estate's attorney stated at the hearing on the broker's commission that Lily Tong told him both she and her friend were prospective buyers. Again, this does not tend to show Lily Tong performed any services as an agent for Liang.

We conclude Tong's claim for a commission was not barred by Business and Professions Code sections 10130 and 10136.[1] That being the sole ground stated by the probate court for denying the commission, it is necessary to remand for a new determination of the commission to which Tong is entitled.

## DISPOSITION

The order filed September 10, 1991, denying Henry Tong's application for a commission on the sale of estate real property, is reversed. The cause is remanded to the superior court with directions to determine the amount of the commission to which Tong is entitled. Tong is awarded his costs on appeal; the superior court is to decide against whom the award shall be made. (Cal. Rules of Court, rule 26(a).)

White, P. J., and Chin, J., concurred.

---

[1]Because we reach this conclusion based on the plain language of the statute, we do not consider Tong's arguments as to the policy reasons the statute should be interpreted to allow him a commission or the executors' counterarguments thereto.