FLORIDA RISK PLANNING CONSULTANTS, INC., Plaintiff-Appellant,

v.

TRANSPORT LIFE INSURANCE COMPANY, et al., Defendants-Appellees.

No. 83–1007.

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1983.

Decided April 20, 1984.

---

Michael P. Connelly, Law Offices of Michael P. Connelly, Ltd., Chicago, Ill., for plaintiff-appellant.

Thomas P. Battistoni, Schiff, Hardin & Waite, Chicago, Ill., for defendants-appellees.

Before ESCHBACH and COFFEY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.*

ESCHBACH, Circuit Judge.

The issue presented is whether the plaintiff is entitled to commissions for procuring insurance business for the defendants. Because the plaintiff is not a licensed insurance agent for the defendants, we hold that commissions may not be recovered. Accordingly, we affirm the district court's grant of summary judgment in favor of the defendants.

## I.

The plaintiff, Florida Risk Planning Consultants ("FRP"), is an organization that produces insurance business. Beginning in 1973, FRP acted as an agent for the Zurich Insurance Company in the production of cancer-expense policies. According to FRP's version of events, which is supported by documents filed in response to the defendants' motions for summary judgment, Transport Life Insurance Company ("Transport") expressly assumed Zurich's obligations in 1976; thus Transport became obligated to pay commissions owing to FRP for work performed on behalf of Zurich.

An entity based in Chicago and known as Center Insurance Agency ("CIA") then began to play a prominent role in this case. CIA had an arrangement with Transport whereby CIA administered the Zurich business. Thus CIA acted as a conduit between FRP and Transport. FRP contends that Transport, acting through CIA, requested FRP to promote and service two other products—a new cancer policy and an accident policy. A similar request was made through CIA by an insurer called All American Life and Casualty Company ("All American"). FRP acceded to both requests and produced business across the nation for both Transport and All American.

To this point, we have stated that FRP "produced business" or "promoted" insurance. A more detailed account is required to resolve the issue whether FRP acted as an unlicensed insurance agent. We therefore turn to that description with the understanding that FRP performed the same functions for Transport, All American, and Zurich.

The district court stated that "FRP acted in the classic salesman mode." FRP, however, did not focus its efforts directly on individual insureds. Rather, the policies that FRP promoted were group policies. FRP's employees thus directed their activities toward the leaders of associations such as auto clubs. FRP sent unsolicited mailings, sought appointments with association executives, and traveled the country attempting to interest the associations in the policies. A letter sent by an FRP employee to an auto club president in 1973 is typical:

> Just to put in writing what we will do: Mail to all Master Members twice, thirty days apart, and everything else necessary to make the program a real success, at no expense to you.

> \* \* \* \* \* \*

> The record shows that this Cancer Expense Plan is a success in AAA Clubs. The results of member's acceptance and designation.

---

* The Honorable Anthony J. Celebrezze, Senior Circuit Judge for the Sixth Circuit, sitting by

their appreciation at claim time speaks loud and clear that members feel this protection, at group rates, is a service to them.

If FRP's efforts were successful, the association would apply for a group or "master" policy. FRP would transmit the application to CIA; when issued, the master policy would be returned to FRP to deliver to the association.

For each association an individual was designated as a "subagent" of FRP. This subagent, who was closely connected to the association, was responsible for personally soliciting members. FRP, however, did not remain uninvolved with individual solicitations. Among other things, FRP prepared solicitation materials, stuffed envelopes, and mailed individual solicitation forms. Furthermore, in many instances, initial premiums were sent to FRP for transmittal to CIA.

FRP and the designated subagents, of course, did not volunteer their services. Commissions based on the amount of premiums collected were paid by CIA to FRP, which, in turn, paid commissions to the subagents. The subagents were properly licensed insurance agents; FRP was not.

This attenuated system of delivering insurance coverage to individuals collapsed in 1978 with the financial demise of CIA. FRP contends that since July of 1978, it has received no commissions. The precise amount claimed owed has not been quantified. We do know, however, that because Transport and All American have canceled all business that originated through CIA, the amount is not accumulating.

In 1979, FRP initiated this diversity suit against Transport and All American. FRP contended that both defendants breached contracts to pay FRP commissions for producing business. FRP alleged that Transport failed to pay commissions pursuant to the express contract made by Zurich Insurance Company in 1973 and assumed by Transport in 1976. Both defendants were charged with breaching implied contracts made in 1976 when the defendants asked FRP to promote their products.

The district court granted the defendants' motions for summary judgment. The court's decision was based on a combination of two grounds: (1) FRP, as an unlicensed insurance agent, is not entitled to receive commissions, and (2) no implied contracts were created. Disagreeing with both grounds, FRP appeals.

II.

■ We must follow Illinois's conflict-of-laws rules to choose the substantive law applicable in this case. See *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Illinois courts have adopted the rules of the *Restatement (Second) of Conflicts* (1971). See *Champagnie v. O'Neil Construction Co.*, 77 Ill.App.3d 136, 32 Ill.Dec. 609, 395 N.E.2d 990 (1979) (contract case); *see also Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970) (tort case); *Ford v. Newman*, 64 Ill.App.3d 528, 21 Ill.Dec. 283, 381 N.E.2d 392 (1978) (trust case); *accord American National Bank & Trust Co. of Chicago v. Weyerhaeuser Co.*, 692 F.2d 455, 460 n. 10 (7th Cir.1982) (Illinois law). Section 188 defines the general rule that, in contract cases, the rights and duties of the parties are determined by the law of the state with the "most significant relationship to the transaction." Because Chicago was the home of CIA, the firm that acted as the connector between the parties, the litigants and the district court agree that Illinois's contract law governs this case.

There is a twist in the conflict-of-laws analysis, however, because the defendants assert illegality as a defense. It would make little sense to look only at Illinois law to decide whether FRP's national activities were legal. Fortunately, § 202 of the *Restatement (Second) of Conflicts* (1971), provides a remarkably clear guide for us to follow. To determine whether FRP acted illegally as an unlicensed insurance agent, we must look to the laws of the 19 states where FRP procured master policies. See *id.* comment *c.* If we conclude that FRP

did act illegally, we must then examine the contract law of Illinois to determine the effect of the illegality on the enforceability of the alleged contracts. *See id.*

The 19 states where FRP solicited business have licensing statutes governing insurance agents. (*See* Appendix of State of Law accompanying this opinion.) The statutes vary somewhat, but as FRP's counsel acknowledged at oral argument, "all of them, in the main, say the same thing." Maryland's statute is representative:

> (b) Agent or broker not to solicit, etc., kinds of insurance for which he is not licensed.—No agent or broker shall solicit or take application for, negotiate, procure or place for others any kind of insurance for which he is not then qualified and licensed.

Md.Ins.Code Ann. § 167 (1979).

■ We hold that FRP's solicitation of applications for master policies fell squarely within this prohibition. As FRP maintained in its original complaint, "plaintiff actively solicited for and placed with Transport [and All American] a large number of applications which resulted in the issuance of policies of insurance." The issuance of a master policy was a very significant event; no member of the group could be insured without the association first obtaining a master policy that set the benefits and premiums applicable to individual insureds. Indeed, the Illinois Supreme Court has stated that "[t]he master policy is the primary contract and must be looked to first in construing group insurance policies." *Hofeld v. Nationwide Life Insurance Co.,* 59 Ill.2d 522, 527, 322 N.E.2d 454, 457 (1975).

In any event, we believe that FRP acted as an unlicensed agent in relation to the individual insureds. Examining the more specific statutes for evidence of the intent of all the licensing laws, we find that four states (Florida, Iowa, Oregon, South Dakota) prohibit unlicensed agents from soliciting applications "directly or indirectly." Moreover, four other states (Indiana, Maryland, Minnesota, West Virginia) require a license before an agent aids "in any manner" in soliciting applications for insurance. At the least, FRP indirectly, and in some manner, solicited individual applications; FRP prepared and mailed solicitation materials. Furthermore, in collecting initial premiums, FRP was explicitly subject to the licensing laws of Hawaii and Texas.

We find patently irrelevant FRP's assertion that the contracting parties never believed the licensing laws applied to FRP's activities. Although the parties' understandings might prove helpful in construing the alleged contracts, they provide no support for a particular interpretation of state statutes.

Having held that FRP performed illegally as an unlicensed insurance agent, the result under Illinois law is clear: commissions may not be recovered. *See Bicek v. Royall,* 307 Ill.App. 504, 30 N.E.2d 747 (1940); Ill.Rev.Stat. ch. 73, § 1065.40 (1983). Indeed the Illinois position is in line with the law of the vast majority of jurisdictions. *See, e.g., Fewel & Dawes, Inc. v. Pratt,* 17 Cal.2d 85, 109 P.2d 650 (1941); *Cook v. Underwriters National Assurance Co.,* 221 So.2d 18 (Fla.Dist.Ct.App. 1969); *Black Motor Co. v. Baughman & Datron Insurance Agency,* 290 Ky. 163, 160 S.W.2d 388 (1942); *Chick Coker Pontiac, Inc. v. Home Indemnity Co.,* 499 P.2d 441 (Okl.1972); *contra Association Group Life, Inc. v. Catholic War Veterans of the United States,* 120 N.J.Super. 85, 293 A.2d 408 (1971). The Illinois cases that FRP cites, *see, e.g., South Center Plumbing & Heating Supply Co. v. Charles,* 90 Ill. App.2d 15, 234 N.E.2d 358 (1967), are inapposite in that they did not involve violations of licensing laws. *See Lavine Construction Co. v. Johnson,* 101 Ill.App.3d 817, 57 Ill.Dec. 389, 428 N.E.2d 1069 (1981) (surveying Illinois contract cases involving the illegality defense). Although Illinois's contract law might excuse some types of illegal performance, violations of licensing laws consistently render compensation contracts unenforceable. *See, e.g., Lozoff v. Shore Heights, Ltd.,* 66 Ill.2d 398, 6 Ill.Dec. 225, 362 N.E.2d 1047 (1977) (unlicensed practice of law); *Central National Bank*

*in Chicago v. Alexander Marketing, Inc.,* 47 Ill.App.3d 58, 5 Ill.Dec. 443, 361 N.E.2d 766 (1977) (unlicensed real estate agent); *Tovar v. Paxton Community Memorial Hospital,* 29 Ill.App.3d 218, 330 N.E.2d 247 (1975) (unlicensed physician).

■ Finally, Transport and All American are not estopped from raising the illegality defense. *See Fewel & Dawes, Inc. v. Pratt,* 17 Cal.2d 85, 109 P.2d 650 (1941); *see generally* 16B J. Appelman, *Insurance Law and Practice* § 8971 (1981); 4 R. Anderson, *Couch on Insurance* § 26:384 (2d ed. 1960). Indeed, were estoppel to apply, the rule denying enforcement of contracts performed in violation of a licensing statute would be a law without application. If, as FRP contends, the district court's judgment is "incompatible with basic principles of equity," its complaint is not with us but, rather, the Illinois courts and legislature.

### III.

For the reasons expressed in this opinion, and without commenting on FRP's claim that implied contracts were created, the district court's judgment is affirmed.

### APPENDIX OF STATE LAW

The licensing statutes of the 19 states where FRP solicited business are codified at:

Ala.Code §§ 27–8–1 to 27–8–15 (Supp. 1983)

Cal.Ins.Code §§ 1631–1651 (West 1972 & Supp.1984)

D.C.Code Ann. § 35–1301 (1981)

Fla.Stat.Ann. §§ 626.011 to 626.711 (West 1972 & Supp.1983)

Haw.Rev.Stat. §§ 431–361 to 431–407 (1976 & Supp.1982)

Ind.Code Ann. §§ 27–1–15.5–1 to 27–1–15.5–18 (Burns Supp.1983)

Iowa Code Ann. §§ 522.1 to 522.5 (West Supp.1983)

Ky.Rev.Stat.Ann. §§ 304.9–010 to 304.9–460 (Bobbs-Merrill 1972 & Supp.1982)

Md.Ins.Code Ann. §§ 165 to 179 (1979)

Mich.Comp.Laws Ann. §§ 500.1200 to 500.1744 (West 1983)

Minn.Stat.Ann. § 60A.17 (West Supp. 1984)

N.J.Stat.Ann. §§ 17B:22–1 to 17B:22–35 (West Supp.1983)

Ohio Rev.Code Ann. §§ 3905.01 to 3905.-99 (Page 1971 & Supp.1982)

Okla.Stat. tit. 36, §§ 1421 to 1433 (1981)

Ore.Rev.Stat. §§ 744.000 to 744.265 (1983)

S.D.Comp.Laws Ann. §§ 58–31–1 to 58–31–37 (1978)

Tenn.Code Ann. §§ 56–6–101 to 56–6–307 (1980 & Supp.1983)

Tex.Ins.Code Ann. art. 21.07A (Vernon 1981)

W.Va.Code §§ 33–12–1 to 33–12–28 (1982)