SHAFER-PEARSON AGENCY, INC., on Behalf of Itself and All Others Similarly Situated, Plaintiff-Appellant, v. CHUBB CORPORATION *et al.*, Defendants-Appellees (Good Weather International Corporation, Defendant).

First District (6th Division) No. 1—90—2509

Opinion filed January 10, 1992.

Kevin M. Forde, Ltd., of Chicago, and Luedtke, Hartweg & Turner, of Bloomington (Kevin M. Forde, Katrina Veerhusen, and John Luedtke, of counsel), for appellant.

Keck, Mahin & Cate, of Chicago, and Rogers & Wells, of New York, New York (Peter R. Sonderby, Janet L. Reali, and James W. Paul, of counsel), for appellees.

JUSTICE LaPORTA delivered the opinion of the court:

Plaintiff Shafer-Pearson Agency, Inc., filed a breach of contract action against defendants on November 23, 1988, on its own behalf and on behalf of a class of others similarly situated. The complaint alleged that the plaintiff class of agents and brokers solicited drought insurance for defendants but were not paid commissions owed to them by defendants, Chubb Corporation, Federal Insurance Company and Good Weather International Corporation.

The trial court certified the class, dividing the class into 10 subclasses, each class representing a separate State where the insurance policies were written. Defendants Chubb and Federal moved for summary judgment as to 9 of the 10 subclasses, excluding the Illinois subclass. The trial court granted summary judgment in favor of defendant as to nine subclasses. The court subsequently denied plaintiff's motion for reconsideration.

Plaintiff raises two issues on appeal: (1) whether certain State statutes bar the plaintiff class members' claims for commissions from defendants; and (2) whether defendants have waived or should be estopped from asserting these statutes as a bar to the class members' claims because (a) estoppel is contrary to public policy and to allow Chubb to rely on its own failure to comply with appointment statutes to excuse it from paying earned commissions would result in a manifest injustice; (b) the class members and Chubb are not *in pari delicto* and therefore the class members can properly be awarded the commissions they have earned; (c) Chubb waived any right to rely on appointment statutes by accepting the benefits generated by the class members by paying commissions to some of the class members for identical policies; and (d) Chubb is estopped from relying on the Iowa,

Michigan or Ohio statutes which require the registration of an insurer's agents because class members in those States reasonably relied on assertions made by Chubb's agent, Good Weather.

In June of 1988, plaintiff, Shafer-Pearson, signed a broker's agreement with Good Weather to sell drought insurance issued by Federal Insurance Company, a subsidiary of Chubb Corporation. The agreement provided that plaintiff would receive 10% commission on every policy for which it submitted an application accompanied by a premium check.

In the summer of 1988, Shafer-Pearson submitted 191 applications for approximately $9.8 million in drought insurance to Good Weather, but the applications and premium checks were returned by Good Weather "due to capacity limits" on the sale of the insurance. Shafer-Pearson filed the instant action, contending that defendants breached their agreement to pay earned commissions to plaintiff and to members of the class. The trial court certified the class, establishing 10 subclasses to represent the brokers and agents in each of the 10 States where the policies were sold. The 10 states were Illinois, Indiana, Iowa, Minnesota, Missouri, Wisconsin, Michigan, Ohio, Kentucky and Tennessee.

Facts obtained through discovery established that Good Weather and Federal entered into an agreement in May of 1985 whereby Good Weather was to act as Federal's exclusive administrator for certain types of insurance, including drought insurance. Good Weather, through independent agents and brokers, offered drought insurance in 1987 to farmers to insure them against the risk of below-normal rainfall. Approximately $250,000 in premiums were collected by Good Weather for the drought insurance sold in 1987.

In 1988, the same type of insurance was offered in the 10 States listed. Good Weather was authorized to accept applications totaling $30 million in coverage. Shafer-Pearson and approximately 124 other entities sold more than 8,700 insurance policies representing approximately $350 million in applied-for coverage. Federal issued $40 million in insurance on a "first-come, first-served" basis. All other applications were rejected and the premium checks were returned. Brokers who submitted the applications that resulted in the issuance of insurance received their 10% commission from an appointed agent of Federal.

In actions separate from this litigation, Chubb and Federal were sued in a class action suit by farmers who had submitted applications and by several State administrative agencies that charged Chubb and

Federal failed to follow various State procedures in the issuance of drought insurance. These actions are not at issue here.

After this action was filed, Chubb filed a cross-claim against Good Weather which alleged that Good Weather breached or failed to comply with duties imposed upon it by an administrative contract agreement signed by Good Weather and Chubb. On May 26, 1989, Good Weather moved to dismiss plaintiff's complaint, arguing that it acted for a disclosed principal and therefore was not liable for nonperformance of a contract between Chubb and plaintiff. Good Weather also moved to dismiss the cross-complaint filed against it by Chubb. Both motions were denied in July 1989.

After discovery on the plaintiff's action against both Good Weather and Chubb, defendant Chubb filed a motion for summary judgment directed at the class members in all of the States except Illinois. Chubb argued that each of the nine States involved had a statute in effect at the relevant time that prohibited the payment of commissions to agents or brokers unless they were "appointed" to solicit business by the insurer in accordance with the statutes of their respective States. Plaintiff responded that most of the statutes cited by Chubb dealt with the "licensing" of insurance brokers or agents and not with the "appointment" of brokers or agents. Plaintiff contended Chubb's argument was not valid on two grounds. Plaintiff argued that Chubb had waived its right to deny the outstanding commission payments because in fact it had paid commissions for the $40 million in drought insurance coverage issued in 1988. Plaintiff also argued that Chubb was estopped from relying on any statute that might be applicable because employees of Chubb's agent, Good Weather, made representations to the class members that either advised them that there was no need to be appointed by Chubb or that Good Weather would "take care of" any appointment requirements. Plaintiff submitted a number of affidavits from brokers and agents to support that position.

On April 26, 1990, the court granted Chubb's motion for summary judgment. The court held: "Plaintiff's lack of appointment is critical. It is so because it is statutory. As stated in *Florida Risk Planning Consultants, Inc. v. Transport Life Insurance*, 732 F.2d 593 (7th Cir. 1984), if the estoppel theory were to apply to a licensing statute, it could render the statute meaningless and with out [*sic*] application. Since Plaintiff/class members lacked the required appointments necessary by statute, this Court finds that any commissions generated therefrom, would be violative of the statutes."

Plaintiff's motion for reconsideration was denied; the court found plaintiff's arguments had already been raised and rejected by the court.

In addition, the court ordered that its April 26, 1990, opinion be modified *nunc pro tunc* to show that the order affected only 9 of the 10 subclasses, excluding the Illinois subclass. The court stated that its ruling was a final order in accordance with Supreme Court Rule 304 (134 Ill. 2d R. 304) and there was no just reason to delay enforcement or appeal.

Plaintiff appealed, contending that the trial court erred in its ruling because it failed to consider the language of the nine State statutes individually. Plaintiff contends that the trial court misconstrued the statutes to prohibit the payment of commissions to "non-appointed" brokers and agents. Plaintiff contends that under the plain language in statutes of six of the States involved—Kentucky, Minnesota, Indiana, Tennessee, Wisconsin and Missouri—the payment of commissions is prohibited only to people who are "unlicensed." The record shows that the approximately 125 class members involved here were all licensed as brokers or agents in their respective States.

Plaintiff concedes that the State statutes in the three remaining States—Michigan, Iowa and Ohio—"appear to prohibit the payment of commissions to parties who are not *both* licensed and appointed." In those States, plaintiff contends, Chubb has waived or should be estopped from asserting the effects of the statutes because of its own failures to register the appointments with the respective States. Plaintiff argues that the class members and defendants are not *in pari delicto* and therefore it would be permissible to find in favor of the class, even if class members were in violation of State law. In addition, plaintiff argues that this decision could be reached on public policy grounds because defendant should not be able to benefit from its failure to register the agents and brokers.

First we consider whether certain State statutes bar the plaintiff class members' claims for commissions from defendants. Plaintiff contends that the trial court improperly interpreted the State statutes in Kentucky, Minnesota, Indiana, Wisconsin and Missouri to each require licensing as a broker or agent and appointment as an agent for the insurance company before a commission can be paid. Tennessee also fits into this category but because of other relevant statutory language, we will deal with the Tennessee subclass later in the opinion. We examine the State statutes individually.

KENTUCKY

The Kentucky statute states that "no agent shall place, and no insurer shall accept, any insurance with any insurer as to which he does not then hold a license and appointment as agent under this subtitle." (Ky. Rev. Stat. Ann. §304.9—080 (5) (Baldwin 1987).) Plaintiff contends

that the lone Kentucky class member fits within the statutory exception which permits "general line[ ] agent[s] *** [to] occasionally place an insurance coverage with an insurer as to which he is not then appointed as an agent, and such insurer may accept such business only when placed through a licensed resident agent of the insurer." (Ky. Rev. Stat. Ann. §304.9—410 (Baldwin 1987).) The statute then requires that both the general line agent and the resident agent be licensed in the State.

State administrative regulations define "occasional" as placement of business that is 20% or less than the agents' total premiums. (806 Ky. Admin. Reqs. 9:200 (___).) Plaintiff contends that an affidavit filed by the Kentucky class member establishes that his applications for drought insurance constituted less than 20% of his agency's total premium volume for the year.

Defendants argue that plaintiff does not fit into the exception because plaintiff has not alleged that Good Weather was a "licensed resident agent" in Kentucky. But plaintiff contends that defendant had inappropriately tried to shift the burden here by making it plaintiff's obligation to license its resident agent, when in fact it is the insurer's obligation. The Kentucky class member, by affidavit of Bill Knuckles, acknowledges that he was licensed as a general line agent.

We find plaintiff is correct in his contention that the burden to license its resident agent with the State is on the insurer. The Kentucky class member was licensed and submitted insurance policy applications to an agent of Good Weather. It was Good Weather's obligation to make sure that its spokesperson was a "licensed resident agent" in accordance with the requirements of the State's insurance statute. Good Weather's failure to register its agent should not deprive this plaintiff class member of a commission if it has been earned.

INDIANA

The Indiana statute states, in pertinent part, "[a]n insurer, insurance agent *** may not pay any commission *** to any person for services as an insurance agent, *** unless the person held, at the time the services were performed, a valid license for that kind of insurance as required by the laws of Indiana for such services." Ind. Code Ann. §27—1—15.5—3(d) (Burns 1986).

Plaintiff argues that the plain language of the statute, which deals directly with the payment of commissions, states only that a person must be licensed and says nothing about appointments. Plaintiff argues that defendants mistakenly try to bring in portions of other Indiana statutes in an effort to discount the plain meaning of the law.

Defendants argue that Indiana law defines an insurance agent as someone who negotiates policies of insurance "on behalf of an insurer." (Ind. Code. Ann. §27—1—15.5—2(1) (Burns 1986).) Defendants cite to other portions of Indiana insurance laws which state that an insurance agent must be "qualified and duly licensed" and commissions cannot be paid unless an agent holds a valid license "as an insurance agent." (Ind. Code Ann. §27—1—15.5—3(a), (d) (Burns 1986).) From these three provisions of Indiana law, defendants draw the conclusion that "absent an appointment, therefore, even licensed producers would not qualify as 'insurance agents' under the statute, and would accordingly be ineligible to receive a commission."

We find the plain meaning of the statute dealing with commissions requires that agents be licensed and that responsibility for registering its agents with appropriate State authorities is on the insurer, in this case, Chubb. The statute includes no language requiring appointments as an agent of the insurer in order for him to earn and be paid a commission. Therefore we find the trial court improperly found Indiana law barred payment of commissions to the class members, who were all licensed brokers or agents.

WISCONSIN

Wisconsin statute section 628.61, entitled "Sharing Commissions," states "[n]o intermediary or insurer may pay any consideration *** to any person for services performed within this state as an intermediary if he or she knows or should know that the payee is not licensed under s. 628.04 or 628.09." Wisc. Stat. Ann. §628.61 (West 1980).

Wisconsin statute section 628.11, entitled "Listing of Insurance Agents," states: "An insurer shall report to the commissioner at such intervals as the commissioner establishes by rule all appointments and all terminations of appointments of insurance agents to do business in this state, and shall pay the fees proscribed ***." Wisc. Stat. Ann. §628.11 (West 1980).

Plaintiff argues simply that section 628.61 permits payment of commissions to those duly licensed in the State without regard to whether they are registered as agents of the insurer.

Defendants contend that plaintiff fails to consider the entire statutory scheme in Wisconsin. Defendants contend Wisconsin law prohibits insurers from conducting business with any "producers" who are not "listed" with the State.

Defendants cite Wisconsin Administrative Code section 6.57, which states, "[n]o insurer shall accept business directly from any intermediary unless that intermediary is a licensed agent listed with that company"

and "[n]o intermediary-agent shall submit an application for insurance directly to an insurer or solicit insurance on behalf of a particular insurer unless the agent is listed with that insurer." Wisc. Admin. Code §§Comm'r Ins. 6.57 (5), (6) (_____, 19___).

Plaintiff argues that Chubb's failure to follow administrative procedures to list all of its agents with the State does not bar Chubb from paying commissions under section 628.61 of the statute.

We find merit in plaintiff's argument and find that Chubb's failure to "list" plaintiff class members with the State as required under the administrative codes does not bar the payment of commissions under section 628.61. Section 628.61 specifies only that an agent must be licensed to be paid. It does not provide that an agent first confirm that the insurer has listed him with the State before a commission can be paid.

MINNESOTA

Minnesota's State statute provides, in pertinent part, that "[n]o commission or other compensation shall be paid or allowed by any person, firm, or corporation to any other person, firm, or corporation acting, or assuming to act, as an insurance agent without a license therefor." Minn. Stat. Ann. §60A.17 subd. 10 (West 1986).

Minnesota's statute provides that "[a] person who holds a valid agent's license from this state may solicit applications for insurance on behalf of an admitted insurer with which the licensee does not have a valid appointment on file with the commissioner; provided, that the licensee has permission from the insurer to solicit insurance on its behalf and, provided further, that the insurer upon receipt of the application for insurance submits a written notice of appointment to the commissioner." Minn. Stat. Ann. §60A.17, subd. 1a(f) (West 1986).

Plaintiff contends that the class members were given permission to act on behalf of Chubb by its agent Good Weather and that under the latter statute Chubb had an obligation to submit a written notice of appointment to the commissioner once it received an application for insurance from the class participants. Plaintiff argues that this requirement is separate and distinct from Minn. Stat. Ann. 60A.17, subd. 10, which provides only that one be licensed to be paid a commission.

Defendant agrees that section 60A.17 applies but argues that this court must look to the definition of "insurance agent" under Minnesota law. "Insurance agent" is defined as someone "acting under express authority from, and an appointment pursuant to section 60A.17 by, an insurer and on its behalf to solicit insurance, or to appoint other agents to solicit insurance, or to write and countersign policies of insurance, or to

collect premiums therefor within this state." Minn Stat. Ann. §60A.02 (West 1986).

Defendants argue that an agent who is not so appointed is not a properly licensed agent and therefore cannot be paid a commission. Defendants argue that plaintiff class members also cannot fit into the exception to section 60A.17, which permits an agent to submit insurance applications to the insurer even though he has not been appointed so long as the insurer then submits a written notice of appointment to the commissioner. Defendants argue that no such written notice of appointment was submitted by Chubb and therefore plaintiff class members did not comply with State statute and were not entitled to commissions.

Plaintiff responds that the plain language in Minnesota's statute bars payment of commissions for unlicensed agents only and says nothing about a prior requirement to register an appointment before a commission can be paid. Plaintiff contends the definition of insurance agent quoted by defendants deals with an agent's requirements to initially obtain a license in the State, and does not preclude the right to payment of a commission once already licensed.

We find the statutes consistent and, when read together, permit payment of a commission to someone who is licensed. The requirement to file appointments with the commissioner is separate and is the obligation of the insurer.

MISSOURI

The Missouri statute provides, "[n]o insurance company doing business in this state shall pay any commission or other compensation to any person for any services, as agent, in obtaining in this state any contract of insurance except to a licensed agent of the company, or a licensed insurance agency or broker having a copy of his license on file with said company." Mo. Ann. Stat. §375.158 (Vernon 1968).

Missouri law defines "insurance agent" as "any authorized agent of an insurer, or representative of the agent, who acts as an agent in the solicitation of, negotiation for, or procurement or making of, any insurance or annuity contract." Mo. Ann. Stat. §375.012 (Vernon 1991).

Plaintiff argues that the Missouri class members complied with the latter portion of section 375.158 when they submitted copies of their licenses as did all other brokers selling "rain" insurance through Good Weather and Chubb. Defendants argue, however, that no commission can be paid to plaintiff class members because the agents were not appointed.

The State statute provides that "[e]very insurance company authorized to provide or transact insurance in this state shall, within 10 work-

ing days of an appointment of an agent to act for such insurance company, notify the director of such appointment upon forms prescribed by the director." Mo. Ann. Stat. §375.022 (Vernon 1968).

We do not agree with defendants' argument that this requirement prevents plaintiff class members from collecting commissions. This statutory requirement merely places the burden of appointment on the insurer. It does not link payment of commissions to appointment. Nor do we agree with defendants' contention that plaintiff class members now claim they are insurance brokers or agents of the insured. Section 375.158 provides for payment of commissions to an agent of the insurance company or to an insurance agency doing business as an agent representing the insurer or as a broker representing the insured. Plaintiff class members fall into the former category and therefore would not be prohibited from earning a commission under this statutory provision.

■ In summary, we find the trial court improperly interpreted the State statutes in Kentucky, Indiana, Minnesota, Missouri and Wisconsin to bar payments of commissions to plaintiff subclass members in those States because the plain language of those statutes permits payment of a commission to any agent or broker who is licensed.

IOWA, MICHIGAN AND OHIO

Plaintiff class members concede that the statutes in the remaining three States—Iowa, Michigan and Ohio—"appear" to each require an agent to be both licensed by the State and appointed by the insured. But plaintiff class members contend that in each State the statute places the onus on the insurer to register the appointments with the State. Plaintiff class members contend that defendants have waived or should be estopped from asserting these statutes as a bar to the class members' claims. Plaintiff class members argue that this position is applicable with regard to these three States and to each of the other six States where this court might find an appointment is required before a commission can be paid.

Plaintiff class members cite four reasons why this court should reverse the trial court's summary judgment ruling in favor of defendants: (1) it is contrary to public policy and would result in a manifest injustice to allow Chubb to rely on its own failure to comply with appointment statutes to excuse it from paying earned commissions; (2) the class members are not *in pari delicto* with Chubb and therefore the class members can properly be awarded the commissions they have earned; (3) Chubb waived any right to rely on appointment statutes by accepting the benefits conferred by the class members by paying commissions to some of the class members for identical policies; and (4) Chubb is

estopped from relying on the Iowa, Michigan or Ohio statutes because class members in those States reasonably relied on assertions made by Chubb's agent, Good Weather.

### 1. PUBLIC POLICY CONSIDERATIONS

First we consider whether it is contrary to public policy and manifestly unjust to allow Chubb to rely on its own failure to comply with appointment statutes to excuse it from paying earned commissions.

Plaintiff contends therefore that it would be contrary to public policy considerations to allow Chubb to invoke the statutes for protection from its own failures. To do so would permit insurers to breach their contractual agreements with brokers simply by failing to file the necessary statutory appointment forms with the appropriate State authorities.

Plaintiff refers us to three cases which support its position: *Wolk v. Benefits Association of Railway Employees* (W.D. Pa. 1958), 168 F. Supp. 715, *Oakes v. Aetna Casualty & Surety Co.* (Tex. Civ. App. 1977), 551 S.W.2d 504, and *State v. Sellers* (Iowa 1977), 258 N.W.2d 292.

In *Wolk*, a Pennsylvania district court reasoned that the defendant carrier was not entitled to assert a defense of noncertification of plaintiff as its insurance agent where defendant's own conduct resulted in the noncertification. (*Wolk*, 168 at 718.) In *Oakes*, an insurance agent sued the insurance companies for which he sold policies after his license was suspended because the insurance companies had failed to register the necessary insurance policy forms with the State. A Texas court of appeals held that summary judgment was improperly granted to defendants because it found that defendants had failed to establish that plaintiff did not have a right to rely on defendants to secure the required approval. *Oakes,* 551 S.W.2d at 507.

In *Sellers*, the supreme court of Iowa considered what, if any, effect it would have on the validity of surety bonds once it was discovered they were executed by an unlicensed agent of defendant. The court, quoting from 3 G. Couch, Insurance, section 26:56 (2d ed. 1984), reasoned that statutory licensing provisions were designed to protect the insured, not to permit the insurer to avoid its obligations. *Sellers*, 258 N.W.2d at 299.

Defendants discount the language in *Wolk*, arguing that it is *dictum*, and in *Oakes*, noting that the case involved registering policy forms, but did not involve licensing. Defendants argue that the burden was on the class members not to take or submit applications until they had been properly appointed according to State statute and that their violation of the statute should prevent their recovery.

Defendants cite several cases in support of their argument that the class members had to verify compliance with State appointment statutes: *Florida Risk Planning Consultants, Inc. v. Transport Life Insurance Co.* (7th Cir. 1984), 732 F.2d 593, *Caribbean Insurance Services, Inc. v. American Bankers Life Assurance Co.* (1st Cir. 1985), 754 F.2d 2, *Dunn v. Phoenix Village, Inc.* (W.D. Ark. 1963), 213 F. Supp 936, *Gallimore v. Arcadia National Life Insurance Co.* (Ohio Ct. App. Mar. 23, 1988), *Perkins v. Lambert* (Tex. Civ. App. 1959), 325 S.W.2d 436, and *Fewel & Dawes, Inc. v. Pratt* (1941), 17 Cal. 2d 85, 109 P.2d 650.

We find, however, that these cases are not relevant since they involve invalidating insurance contracts because of the failure of the agent to be licensed rather than with appointment requirements. That is not our case. Here, the agents and brokers involved were all licensed and a number of the identical applications for policies written, $40 million worth, were apparently good enough to be honored by defendants' issuance of policies. Here the insurance contracts entered into were not against public policy. The controversy stemmed from the defendants' failure to file appointments.

In *Florida Risk Planning Consultants*, the only case cited by the trial court in its ruling, a consulting group, FRPC, sought to collect commissions from Transport Life Insurance Company for insurance policies it "actively solicited for and placed with Transport." (*Florida Risk Planning*, 732 F.2d at 596.) FRPC originally worked as an agent for the Zurich Insurance Company and then later for Transport Life Insurance Company when Transport assumed Zurich's responsibilities in 1976. FRPC solicited the leaders of groups such as auto clubs for permission to sell group policies. If people were interested, FRPC would forward the applications to Central Insurance Agency in Chicago, which would then forward the applications on to Transport. Once approved, each group was assigned a designated subagent who remained responsible for soliciting new members.

The subagents were all licensed insurance agents but FRPC was not licensed. Both FRPC and the subagents earned commissions based on the insurance coverage sold. FRPC sued Transport when Central Insurance Agency failed financially and stopped paying FRPC commission payments. Transport defended the action, contending that FRPC was not licensed and therefore could not collect a commission. The district court granted defendant's motion for summary judgment and the Seventh Circuit Court of Appeals upheld that dismissal. The court of appeals found that FRPC acted as an unlicensed agent when it solicited members and collected applications and initial premium payments. The court held that under Illinois law commissions could not be paid to an

individual or company that performed illegally as an unlicensed insurance agent. *Florida Risk Planning*, 732 F.2d at 596.

*Florida Risk Planning* dealt with an organization that was not a licensed insurance agent and is therefore distinguishable from our case, where all the plaintiff class members are licensed. In the same way, we do not find relevant the other cases cited by defendants. *Fewel* dealt with an unlicensed party who asked the court to enforce a contract between it and an insurer for payment of insurance commissions. The court refused to enforce the contract, finding that the contract was illegal because the plaintiff was never licensed and therefore able to receive commissions. (*Fewel*, 17 Cal. 2d at 90, 109 P.2d at 653.) In *Perkins*, the court held that the insurance agent's failure to obtain an appointment from the insurer prohibited him from collecting a commission. We note that the Texas State statute specifically required the agent to obtain an appointment before he could collect a commission. *Perkins*, 325 S.W.2d at 438.

 Defendants have not addressed plaintiff's contention that public policy considerations prohibit an insurer from benefiting from an agent's efforts without the obligation to pay a commission to him—arguments which we find compelling. As the court stated in *Sellers*, clearly the licensing and appointment portions of the State statutes are designed to protect the insured, rather than the insurer. Here, defendants urge the court to rely on the insurer's own failure to process administrative paperwork as a reason for rejecting plaintiff class members' efforts to collect commission payments. Though a trial may produce other evidence which might rightfully block the payment of such commissions, on public policy grounds we believe this was not a proper basis for granting defendants' summary judgment motion.

### 2. *IN PARI DELICTO*

Next plaintiff argues that the class members and Chubb are not *in pari delicto*, or equally at fault, and therefore the class members can properly be awarded the commissions they have earned. Plaintiff contends that it was Chubb's statutory duty to register the appointments of its agents under Iowa, Michigan and Ohio law, and Chubb knew it had not fulfilled its duty. Plaintiff argues that the class members were not as culpable with regard to the statute because they relied on assertions from defendants, who told them the appointments were either unnecessary or were being "taken care of."

In support of this argument, plaintiff cites *O'Hara v. Ahlgren, Blumfeld & Kempster* (1987), 158 Ill. App. 3d 562, 511 N.E.2d 879,

*aff'd* (1989), 127 Ill. 2d 333, 537 N.E.2d 730 (1989). In *O'Hara*, the court stated that *in pari delicto* is a legal principle that permits the less culpable of various parties in certain situations to obtain relief from otherwise illegal or tortious transactions or occurrences. The Illinois Supreme Court specifically stated that it would not decide the application of *in pari delicto* in the *O'Hara* case so we need not compare the facts of that case to ours. *O'Hara*, 158 Ill. App. 3d at 563-64.

Defendants contend that plaintiff class members cannot recover commissions because they are equally at fault, or *in pari delicto*, with defendants for their failure to obtain the necessary appointments. Defendants argue that public policy dictates this result because plaintiff should not be able to profess to be ignorant of statutory requirements.

■ While the class members cannot claim ignorance of the statutory obligation to register their appointments as agents of the insurer with the State, here, unrefuted affidavits from class members indicate that the class members relied on representations made to them by Good Weather that the insurer would be following through on registering the appointments. Since the statutes involved obligated defendant insurer to file the necessary paperwork and defendants had assured the class members that they would do so, we conclude that the doctrine of *in pari delicto* would not bar any potential recovery by the class.

### 3. WAIVER AND ESTOPPEL

Finally, plaintiff argues that Chubb through its actions and the actions of its agents waived its right to, and is estopped from, relying on the State statutes as a defense. Plaintiff contends that defendants waived their right to rely on the statutes when they solicited applications from broker and agent class members, accepted applications from the plaintiff class members in 1988 and paid commissions on accepted applications from class members in 1987. Plaintiff acknowledges the universal proposition that waiver is a voluntary and intentional relinquishment of a known right. A party may invoke the doctrine of estoppel where he has materially changed his position to his detriment in reliance on another's statement or action.

Plaintiff argues that, here, affidavits from class members established that defendants, through their agent Good Weather, represented to all class members that appointments were either unnecessary or "being taken care of." Plaintiff argues that this establishes

defendants' knowledge of their statutory obligation and thereby defendants waived their right to rely on the statutes.

Plaintiff class members argue that defendants should be estopped from claiming statutory noncompliance because the class members relied on these assurances from employees of Chubb's agent, Good Weather, and because defendants paid commissions to class members on previously written identical insurance policies in 1987.

Defendants reject the waiver and estoppel arguments on the ground that waiver and estoppel cannot be relied on to enforce a contract performed in violation of a licensing statute. Defendants cite seven cases to support this argument. (*Armstrong v. Tidelands Life Insurance Co.* (Tex. Civ. App. 1971), 466 S.W.2d 407; *Benefits Administration Corp. v. Rearick* (Tex. Ct. App. 1986), 705 S.W.2d 234; *Central National Bank v. Alexander Marketing, Inc.* (1977), 47 Ill. App. 3d 58, 361 N.E.2d 766; *Hutner v. Greene* (2d Cir. 1984), 734 F.2d 896; *Dellwood Enterprises, Inc. v. Pacific American Real Estate Fund* (8th Cir. 1981), 653 F.2d 350; *Stinson v. Potter* (Tenn. Ct. App. 1978), 568 S.W.2d 291; *Relocation Realty Services Corp. v. Carlson Cos.* (Minn. 1978), 264 N.W.2d 643, 646.) The majority of the cases cited by defendants do not discuss waiver or estoppel and all are factually distinguishable from the case on appeal here. In each cited case the court found the challenged contract was illegal because the broker was not licensed. Here the plaintiff agents and brokers were licensed in the State in which they were doing business, and the controversy is based solely on the State registration of their authority to solicit applications for this insurance company.

The trial court relied on *Florida Risk Planning*, stating that if the estoppel theory were to apply to a licensing statute, it could render the statute meaningless and without application. This case differs from *Florida Risk Planning*, however. The *Florida Risk Planning* court held that a nonlicensed company was prohibited from collecting commissions and that the defendant was not estopped from raising his own illegal actions as a defense.

■ We find, with regard to Michigan, Ohio and Iowa, that the reasoning in *Sellers* is compelling. Statutory provisions such as licensing are intended for the protection of the insured and not for the protection of the insurer. Though the illegality of a contract can be raised properly as a defense, the illegality here had nothing to do with the agent's illegal gathering of applications and premium checks. The illegality occurred in the insurer's failure to follow ad-

ministrative and statutory procedures imposed by State statute on the insurer.

In addition, we find that a fact question remains as to whether the defendants waived their right to rely on the State statutes as a defense when they paid commissions to agents and brokers for policies issued the year prior. We also find a fact question remains as to whether defendants are estopped from relying on the State statutes as a defense. Plaintiff class members offered unrefuted affidavits from brokers and agents who stated that they reasonably relied on representations made by Chubb's agent, Good Weather, that any necessary registration with the State was unnecessary or would be "taken care of."

We hold defendants' failure to register the agents with the State does not prevent plaintiff class members in Michigan, Ohio and Iowa from collecting commissions once they have submitted an application and premium check if, in fact, that is what they contracted with defendants to do.

TENNESSEE

Plaintiff contends that the plain meaning of the Tennessee statute also permitted payment of a commission to plaintiff subclass members because they were all licensed in Tennessee. The Tennessee statute permits payment of a commission, in part, to those who "held at the time such services were performed a valid license for that line of insurance as required by the laws of this state." Tenn. Code Ann. §56—6—126 (1980) (repealed 1989).

Defendants contend that the subclass members acted improperly in submitting applications for insurance with defendants because Tennessee law prohibited the placement of a policy of insurance with an insurer by any agent not appointed by the insurer. Defendants cite Tenn. Code Ann. section 56—6—119(a) (Supp. 1988), which states: "(a) no insurance agent *** shall place a policy of insurance with an insurer unless he has been appointed by such insurer to act as its agent or limited insurance representative." This section provides for an exception to the rule which is only applicable on policies for life, disability and health insurance.

■ We find the trial court correctly interpreted the State statute in Tennessee to find that it placed the burden of appointment on plaintiff subclass members to establish entitlement to commissions. The agent here had the responsibility to see that the registration of his appointment occurred.

However, we find that the issue of whether defendants waived their right to rely on the Tennessee State statute when agents and brokers were paid commissions for policies issued the previous year is a question of fact which requires further hearing and consideration by the court. An additional question of fact which militates against summary judgment for the defendants is whether defendants are estopped from relying on the Tennessee statute as a defense because plaintiff class members offered unrefuted affidavits from brokers and agents who stated that they reasonably relied on representations made by Chubb's agent, Good Weather, that any necessary registration with the State was unnecessary or would be "taken care of."

CONCLUSION

██ In summary, we find that the statutes in the States of Kentucky, Indiana, Missouri, Minnesota and Wisconsin require that agents be licensed to be paid a commission and hold that licensing is enough to secure their right to a commission if their contract with defendants to solicit potential insureds so permits. As to the subclass members in Michigan, Ohio and Iowa, we find the State statutes place the burden to register the agent on the insurer but that the insurer's failure to register the agent with the State does not bar the agents from obtaining a commission if one is due.

We find the trial court erred in granting defendants' summary judgment motion. Summary judgment is appropriate where the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue of material fact. *Barnes v. Washington* (1973), 56 Ill. 2d 22, 26, 305 N.E.2d 535.

Therefore, we hold that the trial judge correctly interpreted the Tennessee State statute to require the agent to determine if he or she was registered with the State before placing an insurance application with the insurer, but that factual determinations as to the insurer's waiver of this requirement or whether estoppel applies remain. We reverse and remand this case to the trial court for further proceedings consistent with this decision.

Reversed and remanded.

EGAN, P.J., and McNAMARA, J., concur.